CASE 4—ACTION BY MOYNER BAILEY AGAINST THE PROVIDENT SAVINGS
LIFE ASSURANCE SOCIETY OF NEW YORK ON A LIFE POLICY.—
APRIL 27.

# Provident Sav. Life Assu. Soc. of N. Y. v. Bailey.

APPEAL FROM THE GRAVES CIRCUIT COURT—R. J. BUGG, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

LIFE    INSURANCE—POLICY—CONTRACT—SUBSEQUENT    LEGISLATION—
EFFECT—ADOPTION OF MORTALITY TABLES—EVIDENCE—ADMISSI-
BILITY.

1. In an action on a life policy plaintiff averred that defendant
was using the American Experience Tables in calculating extended
insurance when the policy was issued. Defendant did not deny
the allegation. Held, that a copy of the report of defendant
to the insurance commissioner was admissible to show what
tables defendant was using at the time the policy was issued;
Ky. St., 1903, sec. 1627, making copies of records admissible
in evidence in lieu of the original.

2. A policy issued by a New York corporation in Kentucky is not

affected by subsequent legislation of New York, as such sub-
sequent laws can have no extraterritorial nor retrospective
effect.

3. Where a life policy providing for extended insurance is silent
as to the mortality table by which the extended insurance is
to be calculated, parol evidence is admissible to show what
table was in use by the company at the time of the issuance of
the policy, it being presumed that the parties contracted with
reference to such tables.

4. After the issuance of a life policy stipulating for extended in-
surance calculated on 80 per cent. of the amounts retained for
a guaranty fund according to a certain mortuary table, the
insurer can not, without the consent of the assured or bene-
ficiary, adopt a table less favorable to the assured and more
favorable to the company by cutting down the period of extend-
ed insurance.

REED & BERRY and T. P. POSTON, ATTORNEYS FOR APPELLANT.

1. Under the contract of insurance it can hardly be insisted that
while dated March 16, 1891, and limiting its liability to death
occurring on or before March 16, 1892, yet it is to be construed
so as to cover the period extending to April 1, 1892. Forbes
v. Ins. Co., 151 Ind., 89; Ins. Co. v. Tomlinson, 125
Ind., 89; 16 Am. & Eng. Ency. Law, 857 Note 7; Klein v. Ins.
Co., 104 U. S., 88; McDougall v. Provident Life, 135 N. Y., 551;
Rosenplanter v. Provident Life, 96 Fed. Rep. 721.

2. The policy contains no clause giving the holder thirty days of
grace in which to pay premiums, and there is no proof in the
record of any such contract or agreement.

3. The vital point in this case is whether the plaintiff was entit-
led to calculate the extended insurance upon the basis of the
American Experience Table at 4 per cent. interest, in which
event the policy was in force 194 days from March 16, 1901, or
until September 26, 1901, two days after the insured died, or
whether the calculation should have been made under the Actu-
aries or Combined Table at 4 per cent. interest, in which event
the extended period was 184 days or eight days before his
death.

We insist that this question is one of fact upon which there
was a conflict in the testimony and should have been sub-
mitted to the jury, and not a proper case for a peremptory in-
struction of the court. Horn v. R. R. Co., 4 C. C. C. A., 346;
Kansas City Ry. v. Cooke, 66 Fed. Rep., 115.

W. J. WEBB, ATTORNEY FOR APPELLEE.

We submit that under the facts shown by the record in this case that the policy was not delivered or the premium paid until April 1, 1891, and that the extended insurance under the contract carried the risk beyond the death of the insured, if calculated on either of the tables referred to in the brief of appellant's attorneys, and this fact having been shown by the uncontroverted evidence in the record the peremptory instruction given by the court to find for the plaintiff was proper.

### AUTHORITIES CITED.

1. Right of plaintiff to maintain this action. Bell v. Kinneer, 101 Ky., 271; Robinson v. Duvall, 79 K., 83; 11 Bush, 567.

2. Upon what table of mortality was the defendant required to compute the net premium values in calculating the extended insurance on this policy? Phoenix Ins. Co. v. Spirers & Thomas, 87 Ky., 285; May on Insurance, sec. 175; May on Insurance, 1175; Bliss on Life Insurance, sec. 40; Mutual Benfiet Ins. Company v. Dunn, 21 Rep., 213; American Accident Company v. Reigart, 94 Kv., 547; Blackerby v. Continental Insurance Co., 83 Ky., 574; London Assurance v. Companhia De Moagens Do Barreiro, 167 U. S., page 149. L. E., 42, 113; McMaster v. New York Life Ins. Co., 183 U. S. L. E., 46, 64; Grubbs, &c. v Harris' Assignee, 1 Bibb, 567; Lee v. Davis, 1 A. K. Marshall, 397; Collins v. Collins, 79 Ky., 88; Brown v. Todd, 16 Rep., 697; Western Union Telephone Co. v. Eubanks & Russell, 100 Ky., 591.

3. Peremptory instruction was proper in this case. Dallam v. Handley, 2 Marshall, 424; Thompson v. Thompson, 17 B. Monroe, 23.

4. Extended insurance dates from April 1, delivery of policy. Elliott on Insurance, section 31; McMaster v. New York Life Insurance Co., 183 U. S. L. E., 46, 64.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellant issued to John T. Bailey a policy of date March 16, 1891, by which, in consideration of $15, it insured his life in the sum of $1,000 until March 16, 1892. The policy contained these stipulations: "And the said

society further agrees to renew and extend this insurance upon like conditions, without medical re-examination, during each successive year of the life of the insured from date hereof upon the payment on or before the sixteenth day of March in each such year,of the renewal premiums in accordance with the schedule rates, less the dividends awarded hereon.    After deducting the expense charge, which is limited to $4.00 per annum on each $1,000.00 insured, the society agrees to divide the residue of each renewal premium received by it upon this policy as follows: Such amount as shall be required for this policy's share of death losses will be appropriated as a death fund to be used solely in settlement of death claims.   The remainder thereof will be retained as a guaranty fund.   The amounts so retained on account of this policy will be used towards offsetting any increase in the premium on this policy from year to year; or, provided this policy, after five full years' premiums have been paid, be terminated solely by non-payment of any stipulated premium when due, eighty per cent. of any amounts so retained but not so used will be applied to extend this insurance; or if application be made therefor while this policy is in full force and effect, to purchase paid-up insurance."   Bailey paid the premiums on the policy regularly for ten years, but failed to pay the premium falling due on March 16, 1901, and died on September 24th following.    The only question to be determined is whether the policy was in force at his death by reason of the clause quoted providing for extended insurance after five annual premiums were paid.

The defendant pleaded that, after deducting the policy's share of death losses on the 16th of March, 1901, the sum applicable to extended insurance on the policy was $5.02, which extended it for the period of 184 days from March

16th; or until September 16, 1901. The plaintiff replied that the surplus due on the policy was the sum of $6.27, 80 per cent. of which is $5.02; that this, calculated according to the American Experience Tables at 4 per cent., would extend the policy 194 days, and would make it expire on September 26th, or two days after the insured died. She also averred that the defendant was using the American Experience Tables when the policy was issued, and continued to use this as the basis of valuation until November, 1893, when it adopted the Actuaries Experience Tables, according to which the extended insurance on the policy would be 184 days, as alleged in the answer. A copy of the report of the defendant to the Insurance Commissioner of this State for the year ending December 31, 1891, was filed with the reply, in which, among other things, this question and answer appear: "Q. Upon what table of mortality and rate of interest were the net premiums of the company computed? A. American Experience at 4 per cent." The defendant filed a rejoinder, in which it denied the conclusions of the reply but did not controvert the allegation that at the time the policy sued on was issued it had adopted and was using the American Experience Tables of Mortality. At the conclusion of the evidence on both sides the court peremptorily instructed the jury to find for the plaintiff. The defendant complains of this, and also complains that the copy of the report made by it to the insurance bureau was allowed to be read in evidence.

We do not see that the defendant is in position to complain of the action of the court in admitting the copy of its report to be read, for it was only admitted to show what tables the defendant was using at the time the policy was issued, and there was no issue in the pleadings on this sub-

ject.  But the copy was duly authenticated, and, the original being a record of the auditor's office, the copy was admissible for all purposes for which the original would have been competent.  Ky. St., 1903, section 1627.  And as the report was required by law to be made by the defendant, and upon the faith of it, it had been treated by the department as complying with the law, without any repudiation by it of the report after so many years the presumption of regularity should prevail.  It is not presumed that the defendant failed to make a report or violated the law.  The  writing purported to have been made by the defendant was filed with the reply, and was not denied by the rejoinder, or as provided by sction 527 of the Civil Code: "A writing purporting to have been made by a party, if referred to in and filed with a pleading of his adversary, may be read as genuine against him, unless he deny its genuineness by affidavit before the trial is begun."

It is conceded that, if the extended insurance is computed by the American Tables the policy did not expire until September 26th, but that, if it is computed by the Actuaries Tables, it expired on September 16th.  So the only question in the case is, by which tables shall the rights of the parties be determined?  It is shown by parol evidence that the company changed from the American to the Actuaries Tables in November, 1893.  It is also shown that by a statute of New York in the laws of 1892 (Laws 1892, p. 1968, c. 690, section 84) policies were required to be valued by the Insurance Commissioner according to the Actuaries Tables, and that by another statute, enacted in April 1901 (Laws 1901, p. 944, c. 346), they were required to be valued according to the American Tables. After the death of Bailey the company wrote appellee's attorney that the policy was entitled to extended insurance

for 194 days; but this letter was 'based on the New York statute of 1901, the clerk who wrote it not observing that the policy was issued long before that act was passed. The New York statutes have no extra-territorial effect, nor are they retrospective. Therefore neither the act of 1892 nor the act of 1901 has any effect on the rights of the parties under the policy which was issued in March, 1891. A State can make no law impairing the obligation of a contract. The rights of the parties must be determined by the written contract which they deliberately made, unaffected by any subsequent legislation in the State of New York.

The policy being silent as to the method or tables by which the extended insurance is to be calculated, parol evidence is competent to show what tables were then in use by the company; for it must be presumed that the parties contracted with reference to the tables which had been adopted by the company and were then in use by it. After the policy was issued, and the rights of the parties were fixed by it, the company was not at liberty, without the consent of the assured or the beneficiary in the policy, to adopt another table less favorable to the assured and more favorable to the company; for, if it could do this, instead of cutting the time down ten days, it might thus cut it down one-half or more, and so deprive the insured of a very substantial part of his contract. It has been held that when a person applies to an insurance company for a policy he is presumed to apply for the form of policy in use by the company. The same rule must govern the insurance company when it issues a policy calling for extended insurance, and not defining by what tables the extended insurance is to be calculated. The parties must be presumed to contract with reference to the tables then in use, for else the policy would have no definite meaning; and after the policy

is delivered the company can not change its legal effect by any action of its, without the consent of the other parties to the contract. There being no issue as to what tables the defendant was using when the contract was made, only a question of law was raised and the court properly instructed by the jury peremptorily at the conclusion of the evidence. Besides, we do not find in the evidence any substantial conflict from any one who professes to know the facts. The conflict seems to be only as to matters of opinion on questions of law. The report to the Insurance Commissioner is nowhere denied or assailed, and the report was sworn to by the president and seceretary of the company.

Judgment affirmed.