## COOK v. METROPOLITAN LIFE INS. CO.

### No. 16883.

Court of Appeal of Louisiana. Orleans.

May 30, 1938.

Harry R. Cabral, of New Orleans, for appellant.

Spencer, Phelps, Dunbar & Marks and Louis B. Claverie, all of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by Alice Cook, as the heir and beneficiary of John Cook, who died December 9, 1936, against Metropolitan Life Insurance Company on a policy of the face value of $175 issued on the life of John Cook, September 6, 1920. Defendant admitted the issuance of the policy, but denied liability upon the ground that the policy had lapsed because of the non-payment of premiums and though subsequently revived on May 16, 1932, it again lapsed on August 29, 1932, and was never thereafter revived.

There was judgment below dismissing plaintiff's suit and she has appealed.

Act No. 193 of 1906 reads in part as follows:

"No policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium or any note therefor, or of any loan on such policy or of any interest on such note or loan. The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend ad-

ditions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount including any outstanding dividend additions less any outstanding indebtedness on the policy, so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture * * * *." Section 2.

The policy, by its terms, gave to the assured, in the event of its lapse, after it had been in effect for ten years, the option of paid-up insurance or a cash surrender value in accordance with a table contained in the policy. It did not grant non-participating temporary insurance usually referred to as extended insurance. However, in Succession of Watson v. Metropolitan Life Insurance Company, 183 La. 25, 162 So. 790, it was held that although no mention is made of extended insurance in the policy, an insured would, nevertheless, be entitled to such extension as granted by Act No. 193 of 1906, when no selection of any other benefit is made by the assured upon the surrender of the policy. No selection of benefits was made in this case, hence John Cook was entitled to such extended insurance as was authorized by the Act of 1906.

What we have said thus far is without controversy, the sole issue in the case being the standard by which the extended insurance should be computed, the plaintiff contending for the application of the American Experience Table of Mortality, which admittedly would have the effect of extending the policy from the date of its lapse on the 29th day of August, 1932, beyond the date of the death of the assured on December 9, 1936, and the defendant for the Sub-Standard Industrial Table of Mortality which extended the policy to November 6, 1936, thirty-four days before the death of the assured.

On behalf of defendant it is pointed out that the Act of 1906 clearly provides for the computation of the reserve "according

to the standard adopted by said company". Turner v. Peoples Industrial Life Insurance Company, La.App., 180 So. 435. The plaintiff concedes that the defendant could adopt such standard as it saw fit, but relying upon Act No. 52 of 1906, as amended by Act No. 227 of 1916, insists that whatever standard defendant might adopt should be written in, endorsed upon or attached to the policy when issued. The act referred to reads in part as follows:

"Every policy of insurance issued or delivered within the State on or after the first day of January, nineteen hundred and seven, by any life insurance corporation doing business within the State shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties, and no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued. Any waiver of the provisions of this section shall be void."

The policy sued on is called an "Adult Endowment Policy" and was issued to John Cook in his fiftieth year, the weekly premium being 25 cents. Under the heading "Privileges and Concessions to Policy-Holders", there is a table showing the cash surrender value based upon each 5 cents of weekly premiums paid. An application of this table to the policy under consideration shows that after premium payments of 25 cents per week have been made for twelve years (the time this policy was in effect) the cash surrender value of the policy was $48.75. This figure, counsel points out, is, with the difference of only 2 cents, exactly the same as that reached by Mr. C. G. Arlinghaus, the "Section Head of the Mathematical Section of its Industrial Actuarial Division", after a most involved mathematical calculation, as found in the record, and based upon the Sub-Standard Industrial Table of Mortality with $3\frac{1}{2}\%$ Interest. It indicates the reserve value of the policy sued on. There is no provision for extended insurance in the policy, but

there is a formula for the computation of the amount of a "free policy" after its lapse based upon the number of years it had been in force.

Counsel argues, and we think with plausibility, that since the policy contains a provision for the issuance of a "free" or paid-up policy after the payment of three years' premiums and for cash surrender value available after ten years (three years under Act No. 193 of 1906), and there is necessarily read into the policy the provisions of Act No. 193 of 1906, providing for extended insurance, which is necessarily based upon the cash surrender value, that the method of settlement of lapsed policies is by express provision and necessary implication embodied in the policy.

It is conceded that the reserves were accumulated upon the same standard as that by which its extended insurance has been computed. As stated by counsel, "the premiums are determined on the basis of that standard (Sub-Standard Industrial Table of Mortality with $3\frac{1}{2}\%$ interest) and the reserve on the policy is accumulated according to that standard".

Our conclusion is that the defendant, in adopting the Sub-Standard Industrial Table of Mortality as a basis for calculating the reserve and extended insurance due under the policy, did not violate any law of this State or any provision of its policy contract, and that by including a table of values showing reserve applicable to extended insurance, it substantially complied with Act No. 52 of 1906, as amended, with regard to including all stipulations and agreements in the policy, because the law which discloses how the reserve must be applied is read into the policy.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (concurring).

I agree with the result reached by the author of the opinion and therefore concur in the decree. But I fear that the statement in the opinion to the effect that "by including a table of values showing reserve applicable to extended insurance, it substantially complied with Act No. 52 of 1906, as amended" may be construed as an expression of the view that the method adopted by the company in computing the reserve must be referred to in the policy.

I cannot concur in this view. I am convinced that the requirement of Act No. 227 of 1916 that "nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued" can have no reference to the amount of the reserve which, by Section 2 of Act No. 193 of 1906, must be established on certain policies. By the act of 1906 that reserve is required to be established whether or not there is contained in the policy any reference thereto, and, in the same statute which requires that the said reserve be established, it is provided that it shall be "computed according to the standard adopted by said company". It would seem to follow logically that, since the act requires that a reserve must be computed and held as a credit to the policyholder, the failure of the insurance company to refer, in the policy itself, to that reserve could not give to the company the right to point to the act of 1916 and to say that, since the reserve has not been referred to in the policy, that statute prevents the making of any claim based on the said reserve.

And since, in the same statute which requires the reserve, it is provided that the reserve shall be computed according to the standard adopted by the company, that standard need not be referred to in the policy. If, when a policy contains no reference to the standard or method which the company has adopted in computing the reserve, the company is, by Act No. 227 of 1916, prevented from proving that standard or method, then the policyholder cannot recover at all for the value of the reserve because there is not provided any method, by which the reserve may be computed, other than that adopted by the company. If proof of the company's standard is not admissible, then the extended term of the policy cannot be ascertained.

I concur in the decree.

McCALEB, Judge (concurring).

It seems to me that it is a sufficient answer to the plaintiff's contention to remark that Act No. 227 of 1916 has reference only to agreements made between the parties and not to the provisions of the insurance laws of this State which are written into, and form a part of, every policy contract whether they are incorporated in the agreement or not. Therefore, since

Section 2 of Act No. 193 of 1906 requires that the reserves be computed according to the standard adopted by the company, evidence submitted in proof of such standard is clearly admissible.

I respectfully concur in the decree.