**SMITH v. UNITY INDUSTRIAL LIFE
INS. CO., Inc.***

No. 16949.

Court of Appeal of Louisiana.   Orleans.
Nov. 14, 1938.

For former opinion, see 183 So. 585.

Charles J. Mundy, of New Orleans, for appellant.

Frank S. Normann and Harold M. Rouchell, both of New Orleans, for appellee.

*Writ of certiorari denied by Supreme Court Jan. 10, 1939.

PER CURIAM.

The defendant insurance company complains, by application for rehearing, that we erred in remanding this matter for the hearing of further evidence.

It is contended that our refusal to accept the testimony of Mr. Keetch is not justified since the policy sued upon provides that the computations of the surrender values stated in the schedules are based upon the actuaries or combined experience table of mortality. From this premise, it is asserted that the calculations of Mr. Keetch have been figured by use of that table.

■■■■ We have carefully reviewed the testimony of the expert and are still of the opinion that it is insufficient to sustain the burden carried by the insurer to prove by satisfactory evidence that the net reserve was not enough to extend coverage under the policy from the date of lapse to the date of death. We find it unnecessary to point out the many particulars which, to our mind, demonstrate the deficiency of Keetch's deductions. It suffices to say that his evidence taken as a whole reveals that he, previous to the trial, had not make an independent investigation and calculation of the matters for which he was summoned to give expert testimony.

■■■■ Moreover, if it be true that the reserve on this policy was insufficient to extend coverage to the date of the insured's death, we cannot understand how the defendant is injured by a remand of the case for the hearing of further evidence. It should not be difficult in any case for an insurance company to produce succinct and unimpeachable proof showing (1) the actual reserve accumulated on any of its policies at the date of lapse and (2) the period for which such avails will carry the policy on extended insurance. Under Sections 1 and 2 of Act No. 114 of 1898, every insurance company doing business in this state is required to furnish each year to the Secretary of State a full statement of the condition of its business and the Secretary of State is obliged to fix the reinsurance value of the policies issued by it, calculated upon both the actuaries or combined experience table of mortality and the American Experience Table of Mortality. Such statement, together with the valuation of the reinsurance reserve placed on the policy, would, in cases like the one under consideration, be the best evidence of the actual reserve accumulated to the credit of the policyholder at the end of the year preceding the lapse. From these figures, a competent actuary could compute with exactness the value of such reinsurance reserve at the date of lapse and likewise calculate the period of time the net amount would extend the insurance in accordance with the standard adopted by the company.

But counsel for the defendant tell us that we have committed serious error in holding that it was the duty of the defendant to show what standard had been adopted by it, in computing the actual reserve on the policy and, in calculating that that reserve was insufficient to extend coverage to the date of the insured's death. It is said that, because the standard adopted by the company is denoted by the policy to be the actuaries or combined experience table of mortality, the parties to the contract are and should be prohibited from showing that the actual reserve was computed upon any other standard. This contention would attain undeniable force with the addition of a provision that, in all cases, it must appear that the standard adopted by the company produces a value to the policyholder at least as great in amount as the value ascertained by a computation based upon the American Experience Table of Mortality.

Our opinion in this case, with respect to the standard to be used by the insurer in computing reserves, was founded upon our previous holding in Turner v. Peoples Industrial Life Ins. Co., 180 So. 435. After further consideration of the views set forth by us in that case, we think it is imperative that we restate our analysis of the law, with regard to computations of reserves, in order that certain statements contained in that opinion may now be amended.

■■■■ In the Turner Case, we held, in substance, that, while Act No. 114 of 1898 required life insurance companies to set aside reserves computed upon either the actuaries or combined experience table of mortality or upon the American Experience Table of Mortality, such mandate had reference solely to the general reserve account, which every insurance company is compelled to set up on its books before it is permitted to apply any of its resources to the payment of dividends, and not to the actual reserves accumulated to the credit of any one policy according to the experience of the company. We further deduced that Act No. 193 of 1906, in speaking of the reserves on nonforfeitable policies being computed upon the standard adopted

by the company, meant that the insurer was entitled to use, in calculating such actual reserves, a standard based upon its own business experience provided that such standard was fair as between all of its policyholders.

A reconsideration of the provisions contained in Act No. 114 of 1898 and those found in Act No. 193 of 1906 has convinced us that we were in error when we concluded in the Turner Case that the reinsurance reserve, required to be kept by insurance companies under the first statute, had absolutely no connection with the standards adopted by the companies, in computing the reserve, under the later nonforfeiture act. We are still persuaded that Act No. 193 of 1906 accords to the company the right to use any standard it chooses in computing reserves for extended insurance provided such standard does not discriminate unfairly between policyholders but we now hold that the standard adopted for such computation may not produce to the policyholder a smaller reserve than that established by a calculation based upon the American Experience Table of Mortality.

We believe that the correctness of the view we now entertain is demonstrated by the provisions of Section 3 of Act No. 114 of 1898 which prohibits any insurance company from paying a dividend to either its stockholders or policyholders except under certain circumstances and further declares that:

"But for all purposes the reinsurance reserve of every such company shall be computed upon the basis of the so-called 'American Experience Table of Mortality,' with interest at four per cent. per annum."

■ The above language is explicit and we think that it clearly evinces the intention of the Legislature that, for every purpose (except for the payment of dividends), the reinsurance reserve must be computed upon the American Experience Table of Mortality.

We also experience no difficulty in concluding that the Legislature, in speaking of "reinsurance reserve" in Act No. 114 of 1898 and in prohibiting the forfeiture of the "surrender value" of the policy in Act No. 193 of 1906, were referring to the same thing and that the terms are synonymous in that they apply solely to the actual net value of the policy.

■ Counsel for the insurance company in the Turner Case argued, we thought, with much plausibility that the provisions of the Act of 1898 were without application to the pronouncements of Act No. 193 of 1906 forasmuch as they were statutes relating to different subjects of insurance and since the later statute permitted the insurer to adopt its own standard of computation apparently without limitation. But now, after reconsideration, we are satisfied that these statutes, which deal exclusively with the operation of life insurance companies in this State, are laws in pari materiae and that, as such, they must be read and construed together. The Act of 1898 deals generally with the operation of the life insurance business and the Act of 1906, applying to all insurance companies, prohibits them from forfeiting policies under certain conditions by requiring that earned values upon the policies they issue shall be used for specific purposes after such policies have been in force for 3 years or more.

It is now manifest to us that, by reading the provisions of Section 3 of Act No. 114 of 1898, exacting that, for all purposes, reinsurance reserves be computed by the American Experience Table of Mortality, in connection with the Act of 1906, declaring that the reserve calculated shall be used in a certain manner, the Legislature, in speaking of the standard adopted by the company in Act No. 193 of 1906, meant that the company could adopt any standard it desired in computing surrender values provided such standard was a fair one and provided further that the use of such standard did not produce a smaller value than that derived by a calculation based upon the American Experience Table of Mortality.

■ So we say, in the case at bar, that, in the absence of proof that the values stated in the policy are fair as between all policyholders and that they are at least equal to those which would be produced by calculations based upon the American Experience Table of Mortality, the fact that the defendant has designated the table it uses for the computation of surrender values is not sufficient to show that the statement of the amounts set forth in the schedules gives to the assured all the reserve to which he was entitled under the law.

■ In stressing our alleged mistake in remanding this case for further evidence, defendant places reliance on the case of Darby v. Equitable Life Assur. Soc. of the

United States, 143 La. 757, 79 So. 329, wherein the Supreme Court held that [page 330]:

"In the absence of any expert showing to the contrary, we will assume that the calculation of the surrender value as thus made and agreed to in the policy is correct."

It is argued that, by virtue of that decision, we are bound to dismiss the plaintiff's suit because she has not seen fit to produce an expert to contradict the calculations of the surrender value shown in the schedule of the policy. We find, however, that the factual setup in the Darby matter is vastly different from that obtaining here. There, the insurance company rested its case upon the surrender value stated in the policy. Here, it was necessary for the insurer to produce an expert to calculate the period of extended insurance, since the schedules of values contained in the policy state that, after the contract is in force for 11 years (the admitted time in this case), coverage will be granted for 8 years and 7 months. In other words, it became incumbent upon defendant to exhibit that, because of certain cash loans or advances made to the assured, the reserve available for use in the purchase of extended insurance had been diminished to such an extent that, when used for that purpose, it was insufficient to grant coverage from the date of lapse to the date of death. This available reserve was computed by the defendant's expert to be the sum of $8.79. There is nothing contained in the policy schedule which reveals how long that amount will extend the insurance. Hence, the insurer's need for additional evidence in explanation of its policy became indispensable in the establishment of its defense.

The defendant has also directed our attention to the fact that we were in error, in our original opinion, when we stated that, in computing the reserve on this policy, consideration should be given to dividend additions since the contract provides that it is a nonparticipating policy. The point is well taken and we now hold that, in view of the declaration in the policy, the insured was not entitled to participate in any division of surplus by the company.

The plaintiff has also filed an application for rehearing in which she asserts that we were wrong in not granting a final judgment in her favor. We find little merit in her plea. Indeed, after due consideration of all the arguments, we remain convinced that the interest of justice will best be served by remanding the case in order to permit both parties to introduce such evidence in disclosure of the truth of the situation, which is, we have no doubt, capable of ascertainment.

For the reasons above set forth, the applications of plaintiff and the defendant for a rehearing are refused.

Rehearing refused.