## SMITH v. UNITY INDUSTRIAL LIFE INS. CO., Inc.

### No. 17241.

Court of Appeal of Louisiana. Orleans.

March 11, 1940.

Charles J. Mundy and J. I. McCain, both of New Orleans, for appellant.

Frank S. Normann and Harold M. Rouchell, both of New Orleans, for appellee.

McCALEB, Judge.

This is the second time this case has come before us for decision. In our first opinion (see 183 So. 585 and 184 So. 368), we disposed of the legal propositions involved in the litigation and the matter was remanded to the district court for the sole purpose of permitting the parties to adduce further proof showing the correct net reserve on the insurance policy applicable to the purchase of extended insurance and the length of time during which coverage was extended after the lapse.

When the case came up for trial in the district court after the remand, the insurance company produced two expert actuaries who testified at length concerning the computation of the net reserve on the policy and the time during which this reserve was sufficient to provide coverage to the insured on extended insurance. The result of the calculations of these expert witnesses is that the reserve available for the purchase of extended insurance was inadequate to carry the policy in force from the date of lapse to the date of the insured's death.

Upon the failure of the plaintiff to submit proof in rebuttal of the evidence tendered by the insurance company, the district judge, being of the opinion that the computations and calculations of the defendant's actuaries were correct, dismissed the plaintiff's suit. Hence this appeal.

The plaintiff does not question in this court the correctness of the calculations and figures submitted by the actuaries produced by the defendant. Her main objection is that the method used by them in arriving at their conclusion is not in accord with the provisions of Act 193 of 1906 and she asserts that, if their calculations are computed in the manner intended by the statute, the reserve is ample to extend coverage under the policy from the time of default to the date of the insured's death.

The undisputed facts of the case reveal the following: The policy lapsed for non-payment of premiums on April 1, 1933, and the insured died on April 4, 1937, or three years, ten months and three days after the policy had been in default. The experts testifying for the defendant stated that the gross reserve on the policy at the date of lapse, calculated on the Actuaries or Combined Experience Table of

Mortality (which produces a greater reserve than the American Experience Table of Mortality) was $49.49. From this amount, they deducted one-fifth thereof or the sum of $9.90 as the surrender charge provided for by Act 193 of 1906, leaving a balance of $39.59 of reserve. From this balance, they subtracted the assured's indebtedness to the company amounting to $27.81 which left a balance of $11.78 available towards the purchase of extended insurance. They further declared that this balance of $11.78 was sufficient to carry the policy in force and effect for a period of two years and 348 days whereas it was necessary for the insurance to be extended for three years, ten months and three days in order for the plaintiff to be entitled to recover.

Plaintiff complains that the method by which the net reserve has been computed by the actuaries is not sanctioned by Act 193 of 1906. She contends that the statute clearly indicates that, in computing the reserve available for extended insurance, the insured's indebtedness to the company must first be deducted from the gross reserve and that the surrender charge of one-fifth of the reserve, to which the insurer is entitled, may only be calculated upon the difference btween the gross reserve and the amount of the insured's indebtedness. Accordingly, plaintiff proclaims that, if the indebtedness of the insured in the sum of $27.81 is deducted from the gross reserve of $49.49, there is a balance of $21.68 and that, after deducting one-fifth of that amount, there is a balance available for extended insurance in the sum of $17.35 which is more than ample to extend coverage under the policy from the date of lapse to the date of the insured's death.

Contra, counsel for the defendant assert that the plaintiff's contention is unsound for the reason that the statute declares that the surrender charge is to be deducted from the "entire reserve" which can only mean that the one-fifth is to be taken from the total accumulated reserve without subtraction of the insured's indebtedness. They also maintain that, if the statute is interpreted in the manner contended for by the plaintiff, it would result in unjust discriminations between policyholders and that the policyholder, who borrows on his policy, could obtain a greater surrender value than that which is afforded to those insureds who do not become indebted to the company.

While we are considerably impressed by the argument of defendant's counsel, we find that it is not necessary to decide the point submitted forasmuch as it is apparent to us that the experts testifying in the case, as well as counsel for both sides, have completely overlooked a portion of the language used in Act 193 of 1906 which fully covers the case. The pertinent part of the statute provides as follows: "The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company, and after deducting one-fifth of the said entire reserve *or the sum of two and fifty one-hundredths dollars for each one hundred dollars of the face of said policy, if said sum shall be more than the said one-fifth,* shall * * * be applied as a surrender value * * * the same * * * shall be applied * * * to continue the insurance in force at its full amount." (Italics ours) Section 2, as amended by Act No. 57 of 1932, § 1.

█ It will be readily seen from the words we have italicized that, in case the one-fifth of the reserve is less in amount than the sum of $2.50 for each $100 of insurance, the surrender charge to which the insurer is entitled is $2.50 for each $100 of insurance. According to the computations made by the experts in this case, the surrender charge of one-fifth of the gross reserve is $9.90. The face amount of the insurance policy is $400 and is subject to a surrender charge of four times $2.50 or $10. Hence, since the sum of $10 is greater in amount than one-fifth of the reserve, the insurer has the right to deduct it from the gross reserve as a surrender charge.

And the same result obtains if the surrender charge is computed according to the method contended for by the plaintiff. She maintains that the charge to be made by the insurer should be only one-fifth of $21.68 or the sum of $4.34. Since that amount is less than $10, the insurance company is entitled to charge the latter sum against the reserve at the time the policy becomes in default.

It therefore makes no difference whether the method contended for by plaintiff or that used by the defendant is adopted in computing the net reserve available for extended insurance. In each instance, the insured's indebtedness and a surrender charge of $10 must be deducted from the gross reserve. The net reserve is $11.68 which

is admittedly insufficient to provide coverage at the time of the insured's death.

 Plaintiff finally complains that the experts of the defendant, in making their calculations of the net reserve, did not therein include dividend additions to which she claims to be entitled. This point is without merit and the district judge correctly refused to permit any evidence to be offered in support of it since the contract sued upon provides that it is a non-participating policy and since this same contention of the plaintiff was rejected by us in our previous opinion reported in 184 So. 368.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.