On April 13, 1925, a policy of industrial life insurance was issued by the Metropolitan Life Insurance Company on the life of Oscar T. Dawson in the amount of $510, the proceeds thereof being payable to the executor or administrator of the insured. The policy lapsed for nonpayment of weekly premiums on August 28, 1933, and was never revived thereafter. The assured died on May 12, 1939.
Plaintiff, as the duly appointed and qualified administratrix of the estate of the assured, has instituted this suit to recover the face value of said policy, claiming that the accumulated reserve upon the policy at the time of its lapse was more than sufficient to extend the coverage of the policy beyond the date of the insured's death in 1939, whereas the defendant contends the contrary.
The lower court rendered judgment in favor of defendant dismissing plaintiff's suit. From this judgment plaintiff has appealed. *Page 253 
There is no dispute whatever about the facts in this case, they being covered by a stipulation filed in these proceedings. It appears that on April 13, 1925, a policy of industrial life insurance was issued by the defendant company on the life of Oscar T. Dawson in the amount and payable as heretofore stated. On the date of the last premium payment on August 28, 1933, said policy, therefore, had a duration of premium payments of 8 1/4 years. It is also agreed that, for policies of the class to which the policy at issue belonged, the reserve standard adopted by the defendant company was the "Sub-Standard Industrial Table of Mortality", a recognized and long established insurance table of mortality; that the full net level premium reserve that was accumulated on the policy in question as of the date of its lapse, according to the Sub-Standard Industrial Table of Mortality, for a duration of premium payments of eight years, was $72.72, and, for a duration of premium payments of nine years, $82.47. It is also agreed that, had the reserve on the policy in question been accumulated according to the "American Experience Table of Mortality", with interest at four per cent., the full net level premium reserve on said policy, as of the date of its lapse, for a duration of premium payments of eight years, would have been $65.51, and, for a duration of premium payments of nine years, $74.88. It is further stipulated that, if the surrender charge of 20 per cent. of the full reserve, allowable as a deduction under the provisions of Act 193 of 1906, had been deducted from the reserve so accumulated on the policy in question, the net value available to purchase non-forfeiture benefits or extended "term insurance", under the Sub-Standard Industrial Table of Mortality, would have exceeded the net value thus available under the American Experience Table of Mortality.
It is conceded that defendant did not avail itself of the right to deduct from the full reserve, accumulated under the Sub-Standard Industrial Table of Mortality, the full surrender charge of 20 per cent., as authorized by the statute referred to, but, in fact, deducted a surrender charge of less than 20 per cent. of the full reserve, with the result that the net value available for purchase of extended insurance, according to the standard adopted by the company, was still in excess of the net value accumulated under the American Experience Table of Mortality, after one-fifth deduction, as authorized. It is obvious, therefore, that the net value of the policy in question, computed according to the reserve standard adopted by the company, benefited by the more favorable surrender charge admittedly used, was greater than the net value would have been if same had been computed according to the American Experience Table of Mortality, less the 20 per cent. deduction authorized. It is further agreed that, in apportioning this reserve or net value available to the purchase of extended insurance, or non-forfeiture benefits computed according to the standard adopted by the company — that is, the Sub-Standard Industrial Table of Mortality — the extended term on the policy in question amounted to, and was carried in force for, a period of five years and two hundred thirty-five days, expiring, therefore, on April 27, 1939, or fifteen days prior to the insured's death on May 12, 1939. It is also agreed that, if the full net level premium reserve had been accumulated on the policy in question according to the American Experience Table of Mortality, at 4 per cent. interest, with the authorized one-fifth deduction, then the extended term on the policy in question would have expired in the year 1942, or after the date of the insured's death.
Plaintiff contends, (1) that the defendant company had no right to use the Sub-Standard Industrial Table of Mortality at 3 1/2 per cent. interest at the time the policy was issued for the reason that the policy was for $510 and was not, therefore, an industrial policy as defined by Act No. 65 of 1906, and, (2) that the extended term on the policy at issue should be computed according to the American Experience Table of Mortality at 4 per cent. interest.
We observe that the first contention of plaintiff was not made before the trial court and is raised before us for the first time. In the stipulation of facts agreed upon it is specifically declared that the policy at issue was a "policy of industriallife insurance". It would strike us that under such a judicial admission plaintiff should not now be heard to contend the contrary.
It is true that Act No. 65 of 1906 defines "industrial insurance" as policies for $500 or less. The term "industrial insurance" was re-defined by Act No. 148 of 1936 as being policies of insurance which "do not exceed in the aggregate the sum of One Thousand Dollars on a single life". However, *Page 254 
in the stipulation of facts entered into, it is admitted that for policies of the class to which the one at issue belongs the reserve standard adopted by defendant company was the Sub-Standard Industrial Table of Mortality at 3 1/2 per cent. interest. The policy, by its terms, gave to the assured, in the event of its lapse, the option of paid-up insurance or a "free policy" after it had been in effect for three years, or a cash surrender value after it had been in effect for ten years, both values to be computed in accordance with a table contained in the policy. As heretofore stated, the accumulation of reserve as contained in the table of the policy was computed upon the Sub-Standard Industrial Table of Mortality. It is not shown that the standard so used at the time of the issuance of the policy in question was not a proper one.
It must be presumed that the parties contracted with reference to this table, a standard which had been adopted by the company and which was then in use by it. It is a well-recognized rule that, where one applies for a policy of insurance, he is presumed to apply for the form of policy in use by the company and that the parties so contract. When the policy was issued, the rights of the parties became fixed by it and its definite contents and meaning are controlling.
What is concededly the primary issue in the case is the standard by which the extended insurance should be computed. The plaintiff contends for the application of the American Experience Table of Mortality, which, admittedly, would have the effect of extending the policy from the date of its lapse on August 28, 1933, beyond the date of the insured's death on May 12, 1939, and defendant contends for the Sub-Standard Industrial Table of Mortality, which, under the policy provisions, extended it to April 27, 1939, fifteen days before the death of the assured.
Section 2 of Act No. 193 of 1906, providing for extended insurance, reads:
"That no policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium or any note therefor, or of any loan on such policy or of any interest on such note or loan. The reserve on such policycomputed according to the standard adopted by said company,
together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount including any outstanding dividend additions less any outstanding indebtedness on the policy, so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture, provided in case of any endowment policy if the sum applicable to the purchase of temporary insurance shall be more than sufficient to continue the insurance to the end of the endowment term named in the policy, the excess shall be used to purchase in the same manner pure endowment insurance payable at the end of the endowment term named in the policy on the conditions on which the original policy was issued, and provided further that any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void, and provided further that any value allowed in lieu thereof shall be at least equal to the net value of the temporary insurance or of the temporary and pure endowment insurance herein provided for. The term of temporary insurance herein provided for shall include the period of grace, if any." (Italics ours.)
Plaintiff must concede, necessarily, that the defendant company had the right, under the provisions of the quoted statute, to determine the reserve on the policy according to the standard adopted by it, namely, the Sub-Standard Industrial Table of Mortality. The quoted section of the statute, supra, affirmatively recognizes the right of the defendant to compute the reserve "according to the standard adopted by said company".
In the case of Smith v. Unity Industrial Life Ins. Co., 184 So. 368, 369, we said: "* * * while Act No. 114 of 1898 required life insurance companies to set aside reserves computed upon either the *Page 255 
actuaries or combined experience table of mortality or upon the American Experience Table of Mortality, such mandate had reference solely to the general reserve account, which every insurance company is compelled to set up on its books before it is permitted to apply any of its resources to the payment of dividends, and not to the actual reserves accumulated to the credit of any one policy according to the experience of the company. We further deduced that Act No. 193 of 1906, in speaking of the reserves on nonforfeitable policies being computed upon the standard adopted by the company, meant that the insurer was entitled to use, in calculating such actual reserves, a standard based upon its own business experience provided that such standard was fair as between all of its policyholders."
In the case of Cook v. Metropolitan Life Insurance Company, 181 So. 671, in which each member of this court rendered an opinion, we recognized the right of the insurance company, under Act No. 193 of 1906, to determine the reserve and extended term according to the standard adopted by the company, namely, the Sub-Standard Industrial Table of Mortality at 3 1/2 per cent. interest. We concluded that the adoption of such a standard as a basis for calculating the reserve and extended insurance due under the policy was not a violation of any law of this state; that the standard adopted by the company need not be referred to in the policy, and that, by including a table of values showing reserve applicable to extended insurance, there was a substantial compliance with Act No. 52 of 1906, which requires an insurance company to write in, indorse upon, or attach to the policy, when issued, the standard adopted.
In the case of Smith v. Unity Industrial Life Insurance Company, 184 So. 368, 370, we also said:
"* * * We are still persuaded that Act No. 193 of 1906 accords to the company the right to use any standard it chooses in computing reserves for extended insurance provided such standard does not discriminate unfairly between policyholders but we now hold that the standard adopted for such computation may not produce to the policyholder a smaller reserve than that established by a calculation based upon the American Experience Table of Mortality.
* * * * * *
"It is now manifest to us that, by reading the provisions of Section 3 of Act No. 114 of 1898, exacting that, for all purposes, reinsurance reserves be computed by the American Experience Table of Mortality, in connection with the Act of 1906, declaring that the reserve calculated shall be used in a certain manner, the Legislature, in speaking of the standard adopted by the company in Act No. 193 of 1906, meant that the company could adopt any standard it desired in computing surrender values provided such standard was a fair one and provided further that the use of such standard did not produce a smaller value than that derived by a calculation based upon the American Experience Table of Mortality."
In other words, we held that an insurance company could, in accordance with the express provisions of Act No. 193 of 1906, compute the reserve on its policies on the basis of the standard adopted by it, but that the reserve so computed according to said standard should be at least equivalent to that reserve which would have been accumulated by calculation based upon the American Experience Table of Mortality. The only requirement imposed by the Smith case, supra, therefore, was that the reserve computed on the standard adopted by the company should be at least equal to the reserve which would have accumulated if the American Experience Table of Mortality had been used.
In the instant case the "standard adopted by the company", namely the Sub-Standard Industrial Table of Mortality, is shown to have produced a reserve on the policy in question in excess of the reserve that would have been accumulated if the American Experience Table of Mortality were used. It is shown that the full net level premium reserve accumulated as of the date of its lapse, according to the Sub-Standard Industrial Table of Mortality for a duration of premium payments of eight years, was $72.72, and for nine years, $82.47. On the other hand, using the American Experience Table of Mortality, it is found that the full net reserve, as of the date of its lapse, for a duration of premium payments of eight years, would have been $65.51, and for nine years would have been $74.88. It is evident, therefore, that the accumulated reserve on the policy in question, computed under the Sub-Standard Industrial Table of Mortality, for a duration of premium payments of eight years, exceeds, by the *Page 256 
amount of $7, the accumulated reserve computed under the American Experience Table of Mortality, and for nine years, again a favorable excess of $7.59.
Our conclusion is that the defendant, in adopting the Sub-Standard Industrial Table of Mortality as a basis for calculating the reserve and extended insurance due under the policy, is in full compliance with the requirements established and announced in the Smith case, supra, for, not only is the reserve produced equal to, but greater than, the reserve that would have been accumulated if the American Experience Table of Mortality had been adopted.
However, counsel for plaintiff contends that not only must the reserve accumulated according to the standard adopted by the company be equal to or greater than the reserve that would have been accumulated if the American Experience Table of Mortality had been used, but that the extended term must also be as long as the extended term that would have existed if the latter standard were used.
As we have heretofore observed in the Smith case, supra, wherein we recognized the right of an insurance company to compute the reserve on the basis of the standard adopted by it, the only requirement imposed in that connection was that the reserve should be equal to that which would have been accumulated under the American Experience Table of Mortality. We did not require that the extended term, based upon the standard adopted by the company, should be at least equal in length to the extended term that would have existed if the American Experience Table of Mortality had been used.
In the case of Williams v. Peoples Industrial Life Insurance Company, La.App., 191 So. 331, the insurance company computed thereserve on the policy upon the basis of the American Experience Table of Mortality, but computed the extended term upon the basis of the Sub-Standard Industrial Table of Mortality. We properly held that such procedure was not permissible and that all values had to be computed on one standard. After commenting on a dearth of authority dealing with the right of an insurance company to use a different table of mortality in the purchase of term insurance than that by which the reserve was accumulated, we readily indorsed the holding in the case of Provident Savings Life Assur. Company of New York v. Bailey, decided by the Court of Appeals of Kentucky, 118 Ky. 36, 80 S.W. 452, 453, and we said [191 So. 335]:
"* * * There the reserve had been calculated according to the American Experience Table of Mortality at four percent and amounted to $5.02. This sum, if calculated on the same mortality table, at the same rate of interest, would have extended the policy, under consideration in that case, one hundred ninety-four days or two days beyond the death of the assured. The defendant company, however, attempted to apply the `Actuaries Experience Table' according to which the insurance would have been in force only one hundred eighty-four days beyond default, or eight days before the death of the assured. The Court said:
"`The policy being silent as to the method or tables by which the extended insurance is to be calculated, parol evidence is competent to show what tables were then in use by the company; for it must be presumed that the parties contracted with reference to the tables which had been adopted by the company and were then in use by it. After the policy was issued, and the rights of the parties were fixed by it, the company was not at liberty, without the consent of the assured or the beneficiary in the policy, to adopt another table less favorable to the assured and more favorable to the company; for, if it could do this, instead of cutting the time down 10 days, it might thus cut it down one-half or more, and so deprive the insured of a very substantial part of his contract. It has been held that when a person applies to an insurance company for a policy he is presumed to apply for the form of policy in use by the company. The same rule must govern the insurance company when it issues a policy calling for extended insurance, and not defining by what tables the extended insurance is to be calculated. The parties must be presumed to contract with reference to the tables then in use, for else the policy would have no definite meaning; and after the policy is delivered the company cannot change its legal effect by any action of its, without the consent of the other parties to the contract.'
"It does not appear that the Bailey case has been cited in any other jurisdiction nor can we find similar cases, notwithstanding extensive research, nevertheless, we are convinced that the holding in that case is correct and we hasten to add our *Page 257 
endorsement of the able opinion of the Court of Appeals of Kentucky."
We reiterate our holding in the Smith and Williams cases, supra, that, if the standard adopted by the company produces a reserve at least equivalent to the reserve that would have been computed if the American Experience Table of Mortality had been used, all values on the policy must be based upon the standard so adopted.
In the instant case the reserve computed by the defendant was in accordance with the standard adopted by it, which yielded a reserve greater than that which would have accumulated under the American Experience Table of Mortality. The value of extended insurance must, therefore, be determined according to that standard so adopted by the company. The extended term on the policy at issue, determined according to that standard, is shown to have expired before the insured's death, and we conclude that the policy was, therefore, without value at that time, and could not afford to plaintiff the right to elect to receive values based upon the American Experience Table of Mortality, or any other insurance standard.
Furthermore, it is conceded that, if the plaintiff was seeking to obtain the reserve or surrender value on the policy at issue, he would receive the value computed according to the Sub-Standard Industrial Table of Mortality. It is shown that this surrender value would be greater than that which the plaintiff would have been entitled to if computed upon the American Experience Table of Mortality. However, finding that the extended term, as computed according to the latter table, is longer than the former, he insists that the extended term should be computed in accordance with the term more favorable. In other words, it is contended that an election could be made in each instance whereby, if the value determined according to the standard adopted by the company were greater, that value could be taken. If, on the other hand, the value as determined by the American Experience Table were greater, then that value could be demanded.
It is well recognized that insurance tables are mathematical equivalents. One table may give a greater reserve or cash surrender value, but a shorter extended term. Another table may give a smaller reserve or cash surrender value, but a longer extended term. We conclude, therefore, that the values on a policy of insurance must be determined according to one standard and that the insured cannot be permitted to take one value according to one standard and another value according to another standard, so as to get the maximum of benefits under all standards.
The policy in the instant case, having been issued to the assured under a standard adopted by defendant company, and the reserve for extended insurance accumulated under said standard, which standard determines and resolves the term of extended insurance, and the extended term having expired prior to the insured's death, the policy was, therefore, without value as of the date of the insured's death.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.