BATESVILLE INSURANCE & FINANCE CO., INC. *v.* VIRGIL BUTLER, JR.

5-5191                                         453 S. W. 2d 709

Opinion delivered May 18, 1970

*Barber, Henry, Thurman, McCaskill & Amsler,* for appellant.

*Murphy, Arnold & Blair,* for appellee.

*Highsmith, Harkey & Walmsley,* for United States Fidelity and Guaranty Company, cross-appellee.

CONLEY BYRD, Justice. This declaratory judgment action arises out of a collision between a state owned vehicle driven by appellee and cross-appellant Virgil Butler, Jr., and a vehicle driven by James R. Burrow in which Albert Poole was a passenger. After suits were filed by Poole and Burrow against Butler, Butler sought a declaratory judgment against cross-appellee United States Fidelity and Guaranty Company upon his personal automobile policy. Butler contended that he was covered under a non-owned automobile clause or, in the alternative, that U.S.F.&G. was estopped to deny liability because of its agent's representations. U.S.F.&G.

brought in appellant Batesville Insurance & Finance Company, Inc., as a third party defendant and asked for judgment over in the event U.S.F.&G. should be held liable for the alleged representations of appellant. Thereafter, Butler amended his complaint to also ask for relief against appellant.

The trial court found that appellant Batesville Insurance through its agent had represented to Butler that his personal automobile liability policy, issued by U.S.F.&G., provided coverage while driving an automobile owned by his employer, the Arkansas State Highway Commission, and that Butler had relied upon such representation. The court also found that Butler, at the time of the June 11, 1968, collision, was operating a non-owned vehicle "regularly used by him." Pursuant to its findings the trial court denied Butler any relief against U.S.F.&G. but held that appellant was liable to Butler for all benefits which would have been available to him if the representations as to coverage had been correct. Appellant has appealed and Butler has cross-appealed against U.S.F.&G. For reversal appellant contends:

"I. The judgment of the court below declaring that appellant is liable to the appellee, Butler, because of misrepresentation of the extent of Butler's coverage under family automobile policy is not supported by the evidence in this case.

II. The appellee, Butler, is estopped from relying on any misrepresentation as to coverage allegedly made by appellant and cannot recover against appellant.

III. The court below erred in failing to give appellant credit for the amount of premiums appellee, Butler, would have had to pay for coverage under a 'Driver-other-cars' endorsement."

Butler, for reversal of the judgment in favor of U.S.F.&G., contends:

"1. The trial court applied an erroneous test to determine the coverage issue, and,

2. Because of representations made by appellant as agent of U.S.F.&G., the latter should be estopped from denying coverage."

By its policies issued from 1962 to 1968, U.S.F.&G. agreed to pay on behalf of Butler all sums he became legally obligated to pay because of bodily injury and property damages, ". . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile. . . . " The policy defines a "non-owned automobile" as ". . . an automobile or trailer not owned by or furnished for the regular use of either the Named Insured or any relative, other than a temporary substitute automobile."

Through answers to interrogatories, U.S.F.&G. described appellant Batesville Insurance as a "soliciting agent", furnished with blank insurance policy forms and riders which it was authorized to countersign and issue as binding upon U.S.F.&G. on payment of the proper premium. The answers to interrogatories also stated that U.S.F.&G. did write endorsements providing coverage for what is commonly known as "extended non-owned auto coverage" but because of the manner in which it kept records, it did not know whether it had furnished such forms to appellant. Batesville Insurance had not issued such an endorsement prior to the date of Butler's accident.

Mr. Butler testified that his work at the time of the 1968 accident was in the field and that he had to leave the office to do his work for the Highway Department. To get from the office to the field, he went by state owned automobile. On the day of the collision, he had been to Sidon, Arkansas, on state business and

was returning. The cars which he drove were obtained from a vehicle pool, issued according to rank. He was the highest ranking employee using the pool and entitled to drive a car home.

Mr. Butler's testimony about his dealings with appellant, Batesville Insurance & Finance Co., Inc., shows that he was living in Searcy, Arkansas, in 1962 when he first secured his automobile liability policy from appellant. The insurance was renewed from year to year—he is still insured through appellant with U.S.F.&G. During this time Butler had some accidents which he says he reported. At the time he reported a 1964 Forrest City, Arkansas, accident to Mr. Bert Stephens, appellant's manager, Mr. Stephens informed him that he was covered. Sometime in May or June, 1965, while Butler was living across the street from Mr. Stephens, Butler received a call from a man involved in the Forrest City accident inquiring about a "rider" to cover that accident. Butler told the man that he did not have a "rider" but that he thought he was covered. The man replied, "Well, never mind anyway, we're going to the Claims Commission." Because Butler had heard "riders" discussed at the Highway Department's offices, he again discussed the proposition of a rider with Mr. Stephens. This discussion took place as Mr. Stephens drove in his driveway. Mr. Stephens again told Butler that he didn't need a rider, that he was covered and mentioned something in regard to secondary liability. Notwithstanding the foregoing assurances, Butler requested Mr. Stephens to check and make sure. Sometime within the next month, Butler again saw Stephens, either in his or Butler's front yard, and Stephens again assured Butler that he was covered while driving a state owned vehicle. Following the Claims Commission hearing on the Forrest City accident, Butler and his immediate superior, Mr. George Cavaness, were at the Batesville Outing Club with Mr. Stephens. Butler and Cavaness asked Mr. Stephens about Butler's coverage while driving a state vehicle. Mr. Stephens again assured Butler that he was covered while driving a state car.

Mr. George Cavaness testified that the matter of liability insurance coverage was of some concern to his department and a matter that was discussed around the office. He had always made it a policy to specifically talk to the people under his supervision about obtaining some kind of coverage. Since he was having to pay for a "rider" to have coverage and Butler was not, he had called Butler's attention to the fact that Butler should make doubly sure that he had coverage. Cavaness says he was with Butler at the Batesville Outing Club when the discussion was had with Stephens about Butler's liability coverage, and that he heard Mr. Stephens assure Butler that he was adequately covered.

Mr. Stephens, now retired from Batesville Insurance but still receiving some money from it, acknowledged that he knew both Butler and Cavaness. He could not recall the alleged conversations, but he would not deny that they occurred.

Appellant contends that the evidence is insufficient to sustain the trial court's findings because Stephens' statements to Butler were true and correct until such time as Butler made known to Stephens that Butler was driving a non-owned vehicle *furnished for his regular use*. Then appellant argues that there is no evidence showing that Stephens ever knew that Butler was talking about a vehicle furnished for his regular use and that consequently Stephens' statements did not amount to a misrepresentation. We find no merit in this argument because the evidence specifically shows that Butler's inquiries concerned his possible need for a "rider" and also why Cavaness' policy needed a rider and his policy did not.

Appellant's second contention is that the alleged misrepresentations were made under circumstances which would not afford Butler the right to rely thereupon blindly and without further investigation, and that Butler, who had the specific policies in his possession at all times but simply failed to read or examine same, is now estopped from relying upon any representations

which appellant might have made as to the extent of coverage.

The failure of the insured to read the policy issued is not ordinarily a defense to an action against an agent who has misrepresented to the insured that the policy delivered contains the coverage bargained for. See *Couch on Insurance 2d*, § 25:60. Agents such as Mr. Stephens are licensed by the state and hold themselves out as having more knowledge than an ordinary citizen concerning insurance policies and their coverages. For these reasons we find no merit to this contention.

Appellant's last argument is that the trial court erred in failing to give it credit for the premium that Butler would have paid had he been given the coverage represented. Since this alleged error was not raised in the trial court, we will not consider it for the first time on appeal. *Royal Crown Bottling Co. v. Terry*, 246 Ark. 128, 437 S. W. 2d 474 (1969).

We find no merit to the arguments on cross-appeal. The first point raised is that the trial court used the wrong test—*i. e.*, the policy excludes a non-owned vehicle "furnished for the regular use of . . . the named insured," and the trial court in its decree found that Butler was operating a state vehicle "regularly used by him and not within the definition of an insured vehicle as set forth in the policy." The declaratory decree was prepared by counsel and approved as to form by all parties without objection. Furthermore, the findings of the trial court dictated in the record show that the trial court properly used the term within the meaning of the policy.

Butler's second point on cross-appeal is that U.S.F.&G. should be estopped from denying the coverage in question because of the representations of its agent, the Batesville Insurance & Finance Co., Inc. In making this argument, Butler has shown us no reason to overrule our many decisions holding that the doc-

trines of waiver and estoppel, based upon conduct or action of an insurer, cannot be used to extend coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom, *Life & Casualty Co. v. Nicholson*, 246 Ark. 570, 439 S. W. 2d 648 (1969). Furthermore, the only authority, apparent or otherwise, shown to have been delegated to the agent was to countersign and issue policies and riders on printed forms when the proper premium was paid. This falls far short of apparent authority to extend the risk contained in a printed policy by an oral representation as suggested by cross-appellant.

Affirmed.