632 P.2d 1182

Floyd STOCK, dba Four Corners Rental & Sales, Plaintiff-Appellee,

The Pierce Agency, Inc., a corporation, Defendant-Appellee.

v.

ADCO GENERAL CORPORATION, A corporation, and Stuyvesant Insurance Company, a corporation, Defendants-Appellants.

No. 4755/4756.

Court of Appeals of New Mexico.

June 30, 1981.

Certiorari Denied Aug. 5, 1981.

Robin D. Strother, Richard L. Gerding, Tansey, Rosebrough, Robert & Gerding, P. C., Farmington, for plaintiff-appellee Floyd Stock.

Paul L. Butt, Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, Albuquerque, for defendant-appellee, The Pierce Agency, Inc.

Damon L. Weems, Farmington, for defendant-appellant, ADCO General Corp.

Ray H. Rodey, Rodey Dickason, Akin & Robb, Albuquerque, for defendant-appellant, Stuyvesant Ins. Co.

## OPINION

WALTERS, Judge.

Floyd Stock owned a fleet of tractor-trailer units, one of which was destroyed in an accident on May 8, 1978. Following denial of his claim for collision loss, he instituted this suit against his insurance agent, Pierce Agency (Pierce); Pierce's broker and Stuyvesant's general agent, ADCO General Corporation (ADCO); and the insurer, Stuyvesant Insurance Company (Stuyvesant). This appeal by ADCO and Stuyvesant followed the trial court's award of damages in favor of Stock against all three defendants, with judgment over in favor of Pierce against ADCO and Stuyvesant on Pierce's cross-claim for indemnity and reformation of the policy, and recovery of Pierce's attorney's fees.

The facts upon which plaintiff complained are these: Stock, in August 1977, sought physical damage insurance for his fleet. After requesting and receiving bid proposals from several different insurance agencies, he obtained an application for insurance from Pierce, which had been furnished to the agency by ADCO. Stock completed it and submitted it to Mary Finley at Pierce Insurance Agency, Inc., providing with it a list of the drivers who would be operating the units. Subsequently, Pierce obtained coverage from two separate companies, Canal Insurance Company and Stuyvesant Insurance Company. The Stuyvesant policy was the one acquired through ADCO. Pierce had no agency agreement with Stuyvesant and had had no prior dealings with that company; in this transaction it dealt only with ADCO and had no direct contact with Stuyvesant.

The Stuyvesant policy, as issued, was not what was quoted to Pierce nor was it what the insured reasonably expected from the quotation. It contained a "named driver" endorsement which had not been requested or discussed, and the application form did not indicate the endorsement would be included in the contract of insurance. Knowing that the named driver endorsement is a departure from the usual provisions in policies, Stuyvesant furnished ADCO with a supply of special red stickers to be attached to the face page of the policy, which warned of the endorsement and its limited coverage. The sticker was not attached to Stock's policy.

When the policy was received in the mail, neither Mary Finley nor Stock read it. Finley examined the declarations on the face sheet, and Stock simply placed the unopened policy in his office file. The premium for coverage was based on the value of the insured vehicles, not upon the driving records of the named drivers; therefore, neither Finley nor Stock was alerted to the endorsement by the amount of the premium charge. Consequently, neither Pierce nor Stock was aware of the named drivers limitation, nor that the name of one of Stock's drivers, Joe Wisenbaler, was not added to the list of drivers. It was a tractor driven by Joe Wisenbaler that was destroyed, and upon which this suit arose.

By the date of the accident Stock had had the policy for approximately seven months. Following the loss, he read the policy and

clearly understood the provisions of the named driver endorsement. Suit was filed after Stuyvesant refused to pay for loss of the unit because Wisenbaler's name was not listed on the policy.

Stuyvesant and ADCO assert that the trial court erred in refusing to adopt requested findings relating to Stock's acceptance and retention of the policy and his contributory negligence; in finding that Pierce acted as the agent-broker of Stuyvesant; and in finding Stuyvesant negligent. Stuyvesant appeals the judgment entered against it on Pierce's cross-claim for attorney's fees.

## I.

■ Appellants, relying on *Western Farm Bureau Mut. Ins. Co. v. Barela*, 79 N.M. 149, 441 P.2d 47 (1968), argue that Stock received the policy prior to the accident, and had an opportunity to examine it for a reasonable time. Therefore, he had accepted its terms. They contend that the policy provisions were plain, clear, and free from ambiguity, and by his contributory negligence he is barred from recovery.

Stock admits the facts of receipt and retention and the clear language of the policy. Nevertheless, he points to *Pribble v. Aetna Life Ins. Co.*, 84 N.M. 211, 501 P.2d 255 (1972), as support for his position that because he was never made aware of the existence of the named driver endorsement, and had reason to expect that the policy would be like others he had received insuring similar equipment against physical damage, he was required only to make such examination of the documents as would be reasonable under the circumstances.

In *Pribble, supra,* plaintiff's employer obtained an accident-health policy from defendant company. After the plaintiff was seriously injured, company executives met with the insurer's agent and were assured that the insurance policy would cover excess hospitalization and medical expenses beyond the workmen's compensation benefits available to Pribble.

When plaintiff sought to recover medical and hospital expenses for treatments he would not have undertaken without this assurance, it was learned that the policy excluded occupational injury coverage. The company asserted that plaintiff had the obligation to read the policy. The Supreme Court refused to "mechanically charge" plaintiff with the duty of reading and understanding a contract of insurance, holding, instead, that under the facts of that case the insured was

... only bound to make such examination of such documents as would be reasonable for him to do under the circumstances; that he will only be held to that which he would be thereby alerted; and if the language is such that a layman would not understand its full · impact were he to attempt to plow through it, the documents will yield the maximum protection consistent with their language and the reasonable expectation of [the insured].

84 N.M. 211, 216, 501 P.2d 255.

Stock, like the plaintiff in *Pribble*, did not reasonably expect the insurance policy to contain a named driver provision. He thought he would receive a physical damage insurance contract like those he had received previously from other agents and other companies. He was not advised by Pierce that the Stuyvesant policy was different from policies he had received in the past. He was not bound to read the policy word for word. *Accord Olszak v. Peerless Insurance Company,* 119 N.H. 686, 406 A.2d 711 (1979); *Batesville Insurance & Finance Co., Inc. v. Butler,* 248 Ark. 776, 453 S.W.2d 709 (1970); *Rider v. Lynch,* 42 N.J. 465, 201 A.2d 561 (1964). *See Stoes Brothers, Inc. v. Freudenthal,* 81 N.M. 61, 463 P.2d 37 (Ct. App. 1969), and *White v. Calley,* 67 N.M. 343, 355 P.2d 280 (1960). "An insured has a right to presume that the policy received by him is in accordance with his application, and his failure to read it will, under this rule, not relieve the insurer or its agent from the duty of so writing it." 17 Appleman, Insurance Law & Practice 32, § 9406.

The trial court could properly refuse to adopt requested findings that Stock's fail-

ure to read the policy constituted contributory negligence.

## II.

■ Stuyvesant attacks Finding 7, that Pierce acted as agent and broker for ADCO and Stuyvesant. It argues that since there was no agency relationship between Stuyvesant and Pierce, liability could not be passed on to Stuyvesant.

We consider Finding 7 superfluous when all of the findings are read together. Findings 3 and 4 reflect negligence independent of any agency concept, i. e., ADCO failed to follow company practice to notify of a restrictive endorsement by red-flagging the policy, and Stuyvesant issued a policy different from the one quoted to Pierce.

ADCO's liability rests upon its breach of an agent's duty to "obey all reasonable instructions [of its insurer] and . . . [to] exercise reasonable care in carrying out its orders." *National Grange Mut. Ins. Co. v. Wyoming County Ins. Agency,* 156 W.Va. 521, 195 S.E.2d 151, 154 (1973). Stuyvesant's negligence resulted from the issuance of a policy at variance with the policy quoted; thus it breached company policy itself in failing to attach a red sticker or notifying ADCO of its obligation to do so. *See Appleman, supra.*

The liability of ADCO and Stuyvesant, therefore, need not be considered under agency concepts. Their liability is sufficiently rooted in negligence to support the court's decision, regardless of Finding 7.

## III.

■ As a kindred argument to the one above, Stuyvesant contends the trial court imposed a "duty to warn" upon the appellants. ADCO, in its brief, does not contest liability to Stock on any ground other than Stock's contributory negligence. That issue was decided against defendants when the trial court refused their requested findings on contributory negligence, and we have found no error in the court's denial of those instructions. The attack on Findings 2 and 4, therefore, relates only to Stuyvesant's liability.

Stuyvesant's argument necessarily is based on Findings 2 and 4:

2. Issuing an insurance policy covering vehicles which contains a "named driver endorsement" is such a departure from the usual provisions of policies and is so restrictive that a warning or flag should have been used to call attention to the "named driver endorsement," not only to alert or warn the insured, but to warn the insured's agent of the restrictive endorsement.

\* \* \* \* \* \*

4. The policy as issued was not what was quoted to the Defendant, The Pierce Agency, Inc., nor was it what the insured reasonably expected from the quotation. It did not conform to the policy issued by Canal Insurance Company. Such a variance should have been called to the attention of The Pierce Agency, Inc., or Floyd Stock, by ADCO General Corporation or Stuyvesant Insurance Company.

When these findings are considered in the context of other findings, it becomes clear that rather than prescribing an affirmative duty to warn, the findings enunciate the appellants' negligent conduct in issuing a policy which deviated from the one applied for, and in failing to follow the insurer's policy of attaching the red-flag notification of the restrictive endorsement. See our discussion in Part II above. The practical effect of findings of negligence in this area of the law will be to encourage warnings of some kind when an insured is issued a policy different from that which he reasonably expects; it is not a specific duty which these findings establish or impose.

## IV.

■ Stuyvesant also objects to the award of attorney's fees made to plaintiff. The basis for such an award is found in § 39–2–1, N.M.S.A. 1978:

In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded rea-

sonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

The trial court entered a finding that "Stuyvesant was at all times directly involved in decisions to deny payment of plaintiff's loss, which decisions were unreasonable and unconscionable." Stuyvesant contends the finding is totally unsupported and that it reasonably and in good faith interpreted its policy provisions.

The trial court could properly have found denial unreasonable and unconscionable. Stuyvesant was informed by Pierce Agency, both in a telephone call and by letter, that Pierce and Stock believed the policy covered the loss; that Pierce had never seen a named driver endorsement attached to a policy in its 27 years in the insurance business; that insurers should "by all means" point out [such restrictive endorsements] to the agent by "letter or by stamping in RED on the face of the policy that IT IS LIMITED—PLEASE READ." Thus Stuyvesant was specifically informed that the policy issued was not what Stock or Pierce ordered or expected. Stuyvesant knew also that the red sticker alerting its insured of the endorsement was not attached, contrary to its instructions, by its general agent ADCO. Under principles of agency, ADCO's negligence was Stuyvesant's. *Stewart v. Potter*, 44 N.M. 460, 104 P.2d 736 (1940).

Whether or not the trial court was correct in finding that Pierce was Stuyvesant's agent and broker is not material. There was ample evidence to show that Stuyvesant adamantly refused coverage after learning it had issued a policy at variance with its insured's wishes and without notice to the insured by it or its general agent of the variance. There is also sufficient evidence of the communications between plaintiff and the Pierce agency regarding the policy to support the finding that Stuyvesant's denial was unreasonable and unconscionable.

The trial court did not err in assessing attorney's fees for plaintiff against Stuyvesant.

## V.

Both ADCO and Stuyvesant point to the finding of Pierce's negligence as a proximate cause of plaintiff's loss as a bar to the indemnity allowed Pierce on its cross-claim. *Rio Grande Gas Company v. Stahmann Farms, Inc.*, 80 N.M. 432, 457 P.2d 364 (1969), recognizes the propriety of permitting indemnity to one tortfeasor against another who is primarily liable. The issue of indemnity is not concerned with a tortfeasor's liability to the plaintiff; it is a remedy solely concerned with the equities existing among the tortfeasors. *See* discussion in *Dessauer v. Memorial General Hosp.*, 96 N.M. 92, 628 P.2d 337 (Ct.App. 1981). Dean Leflar, in his article entitled "Contribution and Indemnity Between Tortfeasors," at 81 U. of Pa.L.Rev. 130, catalogs a series of cases wherein a tortfeasor held proximately liable for his own negligence in failing to discover and remedy a dangerous condition created by another has been allowed indemnity. That result follows from a determination that the wrongdoers were not *in pari delicto*, that is, negligent in an equal degree, even though all may have been guilty of wrongdoing toward the plaintiff. *See Harmon v. Farmers Market Food Store*, 84 N.M. 80, 499 P.2d 1002 (Ct. App. 1972), for an analysis of indemnification in circumstances of negligence in creation of a dangerous condition vis-a-vis negligence in failing to discover and remedy that condition.

Thus, we acknowledge there exists in the law the principle of indemnity in certain instances. The frailty in this case is the absence of findings which indicate the basis relied on by the trial court for the indemnity award. We must remand that portion of the judgment for findings on that matter.

## VI.

Finally, we consider Stuyvesant's challenge to the court's conclusion that the contract of insurance should be reformed to include the driver of the destroyed truck in the named driver endorsement. Stuyvesant refers us to *Kimberly, Inc. v. Hays*, 88 N.M.

140, 537 P.2d 1402 (1975), wherein reformation was held proper if (1) there has been a mutual mistake, or (2) a mistake by one party accompanied by fraud or other inequitable conduct by the other party. *Kimberly* cited *Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (Ct.App. 1970), and *Morris v. Merchant*, 77 N.M. 411, 423 P.2d 606 (1967), but overlooked *Buck v. Mountain States Inv. Corp.*, 76 N.M. 261, 414 P.2d 491 (1966), which has never been overruled. That case held that where evidence disclosed that the policy issued did not conform to the order placed by the insured and the insured was never advised that the policy differed from what he expected, the evidence would be evaluated as establishing clear, convincing and satisfactory proof of inequitable conduct by one party accompanying the other party's mistake. (76 N.M. at 265, 414 P.2d 491.)

Since, however, the policy was issued for only a one-year period, and expired long before this suit was tried, we see no prejudice to Stuyvesant in the judgment, which includes by reference the matter of reformation.

The judgment, in all respects except the award of indemnity to Pierce, is affirmed. That issue is remanded to the trial court for entry of findings showing the basis for the award, which findings, of course, are subject to further appellate proceedings in the discretion of the litigants.

Since § 39–2–1, *supra*, permits the award of attorney fees, and the statute does not appear to limit the allowance to success at trial only, Stock is awarded an additional fee for his attorneys' defense on appeal in the amount of $2,500.00, against Stuyvesant.

It is so ordered.

WOOD, J., concurs.

HERNANDEZ, C. J., dissents.

HERNANDEZ, Chief Judge (dissenting).

I respectfully dissent.

In addition to the facts set forth in the majority opinion I think it necessary to mention the following: Pierce had never had any business dealings with Stuyvesant prior to the time that it submitted Stock's application for insurance. The application was on a Stuyvesant form and was signed by Stock and was dated August 4, 1977. The form consisted of one printed page with spaces for the insertion of the information requested. One of the questions asked was "Years experience in this business." The type written answer was 36 years. There were a series of boxes asking the type of coverage requested and another series listing the vehicles to be insured. There was a section entitled "Driver Information (complete for all operators)", and the names of three drivers were listed. On an attached sheet the names of five other drivers were listed with notations as to any traffic citations they had received. Also attached to the application, on a separate sheet, was a list of the trucks to be insured and a copy of the lease form used by Stock in renting his trucks. Aside from furnishing the information requested on the form and that on the attachments Stock did not submit any questions as to the type of coverage, nor did he submit any special requests as to coverage.

Stuyvesant's first point of error is that the trial court erred in refusing to adopt the following requested findings of fact:

12. Plaintiff received the policy and on receipt, did not examine, read or review the policy but, rather, placed it in a file drawer with other insurance papers.

13. Plaintiff accepted and retained the policy without objection to its terms for a period of seven months.

14. Plaintiff did not examine, read or review the policy at any time until a loss occurred on or about March 16, 1978, when for the first time, plaintiff reviewed, examined and then read the policy.

15. Upon the reading, review and examination of the policy, Plaintiff understood the language thereof and all provisions of the policy, including the named-driver endorsement and all terms were clear and unambiguous to him.

\* \* \* \* \* \*

21. Plaintiff was negligent in his failure to examine, read and review the policy.

Stock admitted that he did not read the policy and neither did Mary Finley, the person at Pierce who received the policy from ADCO and mailed it on to Stock.

Our Supreme Court in *Western Farm Bureau Mutual Ins. Co. v. Barela*, 79 N.M. 149, 441 P.2d 47 (1968) stated:

[W]e are firmly committed to the principle that receipt and retention of the policy without objection, by one who has had an opportunity to examine it for a reasonable time, is regarded as an acceptance of its terms * * *. It is no excuse that the insured neglected to read the policy or to familiarize himself with its terms * * *.

[T]he application bears the signature of the applicant and it must be presumed that he read the agreement and was aware of its contractual import. *Mofrad v. New York Life Ins. Co.*, 206 F.2d 491 (10th Cir. 1953).

It is usually considered that when the insured applies for a contract, he has a reasonable time after receipt thereof to examine its terms and to return it if unsatisfactory. Particularly is this true where the company sends a contract which is substantially different from the one applied for. 1 Appleman, Insurance Law and Practice, § 172, p. 272.

The application was dated August 4, 1977. The policy was mailed to Stock in August of 1977 and the accident occurred on March 16, 1978. Stock had ample time to read the policy and to determine if it was what he had applied for. He had never bought insurance from Stuyvesant before so there can be no question of reliance on past dealings. The majority rely on *Pribble v. Aetna Life Insurance Company*, supra, to support their conclusion in this regard. This reliance, in my opinion, is misplaced. The factual situation in *Pribble* was far different than in the instant case. The corporation that Mr. Pribble worked for had a group policy with Aetna. After Mr. Pribble was injured the General Agent for Aetna,

when asked, stated that the $10,000.00 hospitalization benefit would be available to Mr. Pribble. The policy which covered 50 pages had a provision that only non-occupational injuries were covered. Mr. Pribble's injuries were work related. Mr. Pribble did not receive a copy of the policy; he and the other employees were given a certificate which stated the coverage in general terms. The certificate covered 29 pages. Aetna denied coverage and Pribble sued to recover hospital and medical expenses. The trial court granted Aetna's motion for summary judgment and our Supreme Court reversed. The principal issue was the General Agent's authority to waive or change a provision of the policy. Our Supreme Court held that the issue of the authority of the General Agent was one fact. Aetna argued that Mr. Pribble was charged with a duty to read the policy and thereby become chargeable with notice of its content upon his acceptance and retention. It was in this context, that our Supreme Court stated the following:

We will not simply mechanically charge Mr. Pribble with the duty of reading and understanding the policy and certificate and then bar him from recovery by a literal application of its terms and provisions. Rather, based on the facts before us, we hold that Mr. Pribble, himself or through his authorized representatives was only bound to make such examination of such documents as would be reasonable for him to do under the circumstances; that he will only be held to that which he would be thereby alerted; and if the language is such that a layman would not understand its full impact were he to attempt to plow through it, the documents will yield the maximum protection consistent with their language and the reasonable expectation of Mr. Pribble.

The Stuyvesant policy consisted of three pages and three half pages one of which was the Named Driver Endorsement which reads as follows:

Named Driver Endorsement

It is understood and agreed that while the vehicle(s) are being operated, cover-

age only applies when being operated by a driver listed herein, or any new driver hired subsequent to the effective date of this policy subject to the name of such driver being reported to the Company or its agent prior to his date of employment. The acceptance of new drivers shall be evidenced by the issuance of an endorsement naming such drivers. The non-acceptance of any new driver or any drivers listed herein, will also be evidenced by the issuance of an endorsement excluding such drivers granting ten days advance notice.

Name of Driver_____

I also take issue with the following statement made by the majority: "The policy as issued was not what was quoted to Pierce." The person in the Pierce Agency who obtained the quotation from ADCO and who filled out the application furnished by Stuyvesant was Mary Finley, and her testimony in this regard was as follows:

Q. Is there any reason why you didn't take Mr. Stock's application and policies through one of the other general agents other than—

A. We had received the cheapest quotation from ADCO.

Q. So you were just seeking to find him the cheapest deal; is that right?

A. Yes.

Q. Now, so as to obtain the insurance from Stuyvesant through ADCO, did you fill out an application form for Mr. Stock?

A. Yes, sir.

Q. Where did that come from?

A. From ADCO in Denver.

\* \* \* \* \* \*

Q. As I understand it, during the time you were involved with this particular policy you had no direct contact with Stuyvesant; is that right?

A. This is correct.

Q. All your dealings were with—

A. —ADCO.

\* \* \* \* \* \*

Q. I take it when you were discussing with ADCO the quote that they were going to give you, or did give you, that there was no conversation pertaining to a Named Driver Endorsement?

A. No, there was not.

The only part of the application relating to coverage was the following:

| Coverage | Limits of Liability | Premium Unit 1 etc. |
|---|---|---|
| Comprehensive | ACV or $ Less $ Ded | $ |
| Collision or Upset | ACV or $1000. Less $1000 Ded. | $ |
| Theft, CAC | 250. Ded. | $ |
| Downtime | | $ |
| Mobile Equipment | | $ |
| | | |
| | | Total Premium |

An application for insurance is a mere offer which does not ripen into a contract until accepted by the insurance company. If the company issues a policy materially different from that applied for, in the eyes of the law, the policy is a rejection of the offer and is a counter-offer which becomes a binding contract only when accepted by the original offeror—the would-be insured.

*Life Insurance Company of Georgia v. Miller,* 292 Ala. 525, 296 So.2d 900 (1974).

It is a well recognized rule that, where one applies for a policy of insurance, he is presumed to apply for the form of policy in use by the company and that the parties so contract. When the policy was issued, the rights of the parties became fixed by it and its definite contents and meaning are controlling.

*Dawson v. Metropolitan Life Ins. Co.,* 9 So.2d 252 (La.Ct.App. 1942).

In my opinion Stuyvesant's first point of error is well taken.

Stuyvesant's second point of error is that the trial court erred in finding that Pierce acted as agent-broker for Stuyvesant. I agree.

An insurance broker, like other brokers, is primarily the agent of the first person who employs him, and is therefore ordinarily the agent of the insured . . . .

III Couch On Insurance 2d, § 25:94, p. 405.

One who procures another to obtain insurance for him thereby makes such person

his agent and assumes full responsibility for his acts performed pursuant to the agency thus created. *Adams v. Manchester Insurance & Indemnity Company*, 385 S.W.2d 359 (Mo.Ct.App. 1964).

In my opinion, under the facts of this case Pierce was the agent of Stock. Pierce placed the order for the insurance policy for Stock and had the duty to inspect it to see that it was what Stock wanted. *Butler v. Scott*, 417 F.2d 471 (10th Cir. 1969).

Mr. White, the general manager of the Pierce Agency, testified in part as follows:

Q. Had you at any time prior to August of 1977 dealt with or written any insurance through the Stuyvesant Insurance Company?

A. No, sir.

    *      *      *      *      *      *

Q. Do you as an agency contract with those companies to write their insurance for them?

A. Well, we broker policies.

Q. Was the business which was written with Stuyvesant the kind that you would enter into a contract with or broker through someone else?

A. That would be a brokered business.

    *      *      *      *      *      *

Q. Were you an agent?

A. For Stuyvesant?

Q. For Stuyvesant in this particular instant.

A. No, sir, not a licensed agent for them, no.

    *      *      *      *      *      *

Q. After writing a policy, and assuming its (sic) delivered to the insured, do you consider your job as an agent over?

A. No, sir.

Q. Do you consider yourself a continuing representative for that insured?

A. Yes, sir, I do.

Stuyvesant's fifth point of error is that the trial court erred in imposing upon it a duty to warn. This point has reference to the two following findings made by the trial court:

2. Issuing an insurance policy covering vehicles which contains a "named driver endorsement" is such a departure from the usual provisions of policies and is so restrictive that a warning or flag should have been used to call attention to the "named driver endorsement," not only to alert or warn the insured, but to warn the insured's agent of the restrictive endorsement.

4. The policy as issued was not what was quoted to the Defendant, the Pierce Agency, Inc., nor was it what the insured reasonably expected from the quotation. It did not conform to the policy issued by Canal Insurance Company. Such a variance should have been called to the attention of The Pierce Agency, Inc., or Floyd Stock, by ADCO General Corporation or Stuyvesant Insurance Company.

In my opinion, the assertion in finding No. 2 that "a warning or flag should have been used to call attention to the named driver endorsement, not only to alert or warn the insured, but to warn the insured's agent of the restrictive endorsement" constitutes a conclusion of law and not an averment of fact. A declaration of a right or duty arising from certain facts is a conclusion of law. As a conclusion of law it is subject to independent review by this court.

In the absence of a statutory requirement regulating the size and other characteristics of the type employed to state the policy contract or prescribing the color of the printing, an insurance policy or application may be printed in any size of type or color of printing.

*Southern Guaranty Insurance Company v. Gipson*, 275 Ala. 538, 156 So.2d 630 (1963).

Section 59–16–14(A), N.M.S.A. 1978, provides:

On and after the effective date of this act no policy of life, annuity, casualty, fidelity, surety, fire, marine, vehicle and title guaranty shall be delivered or issued for delivery in this state, nor shall any endorsement, rider or application which becomes a part of any such policy be

used, until a copy of the form and the classification of risks pertaining thereto have been filed with the superintendent of insurance.

This section was enacted in 1961. The record shows that Stuyvesant's "named driver endorsement" was approved by the Superintendent of Insurance for the State of New Mexico on February 22, 1977. The only duty imposed by an insurer as to the language, form and arrangement that a policy of insurance should take, absent some statutory requirement, is that:

> The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citations omitted.] An exclusionary clause must be conspicuous, plain and clear [Citations omitted] and must be construed strictly against the insurer and liberally in favor of the insured.

*Crane v. State Farm Fire and Casualty Company,* 5 Cal.3d 112, 485 P.2d 1129, 95 Cal.Rptr. 513 (1971).

"Insurance contracts have been characterized as adhesion contracts whose terms often are unintelligible to the insured. [Citations omitted.] Insurance companies have a duty to make policy provisions plain and prominent, especially those relating to coverage." *Wells v. Wilbur B. Driver Company,* 121 N.J.Super. 185, 296 A.2d 352 (Law Div. 1972).

Mr. Stock admitted, that if he had read the policy, he would have readily understood the driver endorsement provision. The fact that Stuyvesant had prepared red warning stickers to be attached to a policy when the named driver endorsement was incorporated did not enlarge the duty imposed upon them by the citations quoted above or create a new duty. Consequently, ADCO's failure to attach this sticker to Stock's policy was without legal consequence.

As to the trial court's finding No. 4, I have previously discussed it and find it completely without evidentiary support in the record.

For all of these various reasons I would reverse the judgment of the trial court en-tered on June 23, 1980, and remand this cause with instructions to vacate said judgment and to enter judgment in favor of ADCO and Stuyvesant, both as to the claim of Stock and the cross-claim of Pierce and that costs be assessed against Pierce.