IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20626
_____


MARVENIA WEDGEWORTH, ETC., ET AL.,

                                                    Plaintiffs,

MARVENIA WEDGEWORTH, Individually as
personal representative of the Estate of
Tommy R. Wedgewood and as next friend of
Tommy Lee Monroe Wedgeworth, A Minor;
ROBERTA GROSSMAN, Guardian of the Estate
of Tommy Lee Monroe Wedgeworth, A Minor;
OXY USA INC.; ARTHUR RASKE,

                                        Plaintiffs-Appellants,

                        versus

HOME INDEMNITY CO., ET AL.,

                                                    Defendants,

LEAVELL-DANFORD INSURANCE AGENCY,

                                        Defendant-Appellant,

                        versus

UNITED STATES FIDELITY AND GUARANTY COMPANY,

                                        Defendant-Appellee.
_____

        Appeal from the United States District Court for the
                    Southern District of Texas
                          CA-H-93-3784
_____
                         June 17, 1996

Before REAVLEY, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

In this facially complex case, the plaintiff-appellant, Leavell-Danford Insurance Company ("LD"), is the assignee of several actions against United States Fidelity and Guaranty Co. ("USF&G"), the primary insurer. LD seeks review of the district court's grant of summary judgment to USF&G, and denial of partial summary judgment to LD. We hold that LD as assignee was not entitled to summary judgment on its contract reformation claim, and consequently affirm the district court's denial of partial summary judgment to it. With respect to the district court's grant of summary judgment to USF&G, we find that factual issues remain, particularly if New Mexico law applies, and therefore reverse summary judgment in favor of USF&G. We remand the case to the district court for a decision on the choice-of-law question, and for further consideration in the light of our opinion below.

I

This lawsuit arose from an accident that occurred on an oil lease owned by Oxy USA, Inc. ("Oxy"). Three employees of General Petroleum, Inc. ("GP"), Tommy Wedgeworth, Arthur Raske, and R. C. Bevers, were cleaning an oil storage tank on the lease in April 1991 when an explosion occurred. Wedgeworth was killed, and Raske

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

and Bevers were injured. These GP employees had been working on Oxy's lease under a contract between GP and Oxy. Under that contract, GP had agreed to name Oxy as an additional insured on GP's liability policies. However, Oxy was not covered under the policies, and it is Oxy's lack of liability insurance coverage that precipitated the actual suit before this court.

GP was insured by USF&G, through LD. After LD received notice that GP wished to add Oxy as an additional insured on its liability policies, LD made two policy renewal requests to USF&G, in May and June of 1990, but Oxy was not included as an additional insured on either request. Soon thereafter, USF&G sought confirmation of the parties to be added as additional insureds in a telephone call. Glenn Danford, the insurance agent at LD responsible for the GP account, instructed USF&G that the additional insureds should be identified as set forth in the June policy renewal request--a request in which Oxy was not included as an additional insured. Before sending the 1990-91 policy to GP, USF&G delivered the policy to LD and requested it to notify USF&G if the policy contained any errors. LD neither identified any errors, nor advised USF&G that Oxy should be included as an additional insured.

LD nevertheless issued a certificate of insurance to Oxy, dated October 8, 1990, describing Oxy as an additional insured on the 1990-91 policy. The certificate, however, contained the

-3-

following disclaimer: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." USF&G never issued a written endorsement to the 1990-91 policy, and Danford admitted that he was not aware of any endorsement naming Oxy as an additional insured on the 1990-91 policy prior to the April explosion giving rise to the lawsuits underlying this action.

The Wedgeworth plaintiffs (Wedgeworth's survivors and Raske and Bevers) filed separate actions in Harris County, Texas, against Oxy, based on injuries that they suffered in the explosion. USF&G declined to defend Oxy in these lawsuits. Oxy thereupon entered into agreed judgments with the plaintiffs totaling $2,650,000. As part of the settlement agreement, Oxy assigned its right to sue USF&G to the Wedgeworth plaintiffs and further agreed to pay them $500,000. In return, the plaintiffs agreed not to execute on the agreed judgments.

Oxy later filed suit in Midland, Texas, against GP, alleging that GP violated its contractual duty to Oxy to obtain insurance coverage for Oxy. Oxy and GP signed an agreement and assignment, under which GP assigned all of its causes of action against USF&G and LD to Oxy. In exchange for the assignments, Oxy agreed not to execute on any of GP's assets other than assets resulting from or

acquired pursuant to the assignment. Ultimately, the Midland suit was removed to federal court and consolidated with the instant suit in September 1994. No judgment was entered against GP, and Oxy's claims against GP were dismissed with prejudice in March 1995.

In July 1994, prior to the consolidation, another settlement and release was reached among the Wedgeworth plaintiffs, Oxy, LD, and others. Under the agreement, (1) Oxy assigned all causes of action it had received by assignment from GP to the Wedgeworth plaintiffs; (2) Oxy and the Wedgeworth plaintiffs released all their claims against LD; and (3) Oxy and the Wedgeworth plaintiffs assigned all of their causes of actions to LD. The effect of all this, along with the earlier settlements, is that LD is now in the position to urge GP's rights against USF&G.

In September, LD--realigned as a plaintiff and owner of all remaining claims--filed a second amended complaint alleging the assigned and individual claims. Two months later, USF&G filed a motion for summary judgment, seeking a declaratory judgment that it had no obligation to defend Oxy and, consequently, no liability to Oxy's assignee, LD. On the same day, LD filed a motion for partial summary judgment for contract reformation, to add the omitted Oxy as an additional insured to the 1990-91 policy. The district court granted summary judgment for USF&G and denied summary judgment to LD, holding that the insurance policy could not be reformed to

reflect Oxy as an insured under either the laws of New Mexico or Texas, because, under New Mexico law, "[i]t is clear that if General Petroleum had read the policy it would have seen that Oxy was not listed as an insured," and under Texas law, LD's actions as an agent of USF&G could not bind USF&G. The district court then entered a final judgment, dismissing all claims in the instant suit. LD has timely appealed both the denial of its motion for partial summary judgment on the reformation of contract claim, and the summary judgment rendered in favor of USF&G.

## II

### A

LD first argues that the district court erred by refusing to grant its motion for partial summary judgment, in which the insurance agency sought reformation of the insurance contract, to add Oxy as an additional insured. We affirm the district court's ruling on this issue, but we affirm on different grounds from those relied on by the district court. First, the district court erred in failing to determine the choice of law question. Moreover, under New Mexico law, there are issues of fact yet to be resolved as we further shall explain. It is corollary to this ruling that we reverse the district court's grant of summary judgment for USF&G, which dismissed LD's complaint. The case will be remanded for further proceedings not inconsistent with this opinion.

### B

The district court avoided the choice-of-law question in this case. Instead, it simply held that all claims against USF&G should be dismissed, whether the court applied the law of Texas or New Mexico. On appeal, LD argues that the result is not the same under both state's law, and that the district court should have applied New Mexico law. More specifically, LD contends that New Mexico law applies to the contract claims in the instant suit, and that all of the claims that it has brought are contract claims. LD explains

that GP and LD both had their offices and principal places of business in New Mexico, the insurance negotiations (and alleged omissions) all took place in New Mexico. Furthermore, the accident involving GP's employees occurred in New Mexico.

USF&G argues that even if LD is correct as to the law governing the merits of reformation, the "threshold question" of the legality of the assignment of the claims themselves should be decided under Texas law. It points out that all the assignments relate to Texas lawsuits, and that the vast majority of parties executing the assignments did so in Texas. The district court, however, did not decide the "threshold question"; it instead chose to rule on the merits of the issues raised in the summary judgment motions, without deciding which state's law applied.[1] The district court ruled that, under New Mexico law requiring the insured to read his policy to the extent that it is reasonable under the

---

[1]Federal courts must follow the choice-of-law rules of the state in which they sit, Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985), and thus Texas choice-of-law rules apply in the instant case. Texas has adopted the "most significant relationship" test for determining choice-of-law issues in both tort and contract cases. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420-21 (Tex. 1984), vacated on other grounds, 665 S.W.2d 439 (1984). Under this test, however, the laws of more than one state may apply in a single case, with one state having the most significant relationship to one issue, while another state has the most significant relationship to another issue. For this reason, both LD and USF&G may be able to present convincing arguments for the application of different states' laws, relative to different issues in this lawsuit.

circumstances, USF&G was entitled to summary judgment because "[i]t is clear that if General Petroleum had read the policy it would have seen that Oxy was not listed as an insured."  It further held that, under Texas law, an insurance agent cannot waive, change, or alter the terms of an insurance policy, and, therefore, LD's claim collapsed because it could not win its argument for contract reformation to include Oxy as an insured.

We decline to decide the choice-of-law question in the course of our ruling on this appeal.  In McClelland Eng'rs, Inc. v. Munusamy, 784 F.2d 1313, 1319 (5th Cir. 1986), overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana, 821 F.2d 1147, 1163-64 n.25 (5th Cir. 1987), vacated by 109 S.Ct. 1928 (1989), we stated that, "We have found no case where a court of appeals rendered an initial determination on a choice-of-law question; we decline the invitation to be first to do so because we are confident that the district court is perfectly capable of determining the choice of law . . . ."  We therefore will remand this case to the district court for resolution of the choice-of-law question, and for further proceedings in accordance with that resolution.

Inasmuch as the district court's ruling depended on what we find to be an erroneous interpretation of New Mexico law, however, we now turn to address the district court's assumption that GP's

failure to read the policy was necessarily fatal to its claim for reformation.

B

The district court determined that, under New Mexico law, it should grant USF&G's motion "because General Petroleum did not read the policy and detect the mistake there and because Leavell's actions cannot bind USF&G." LD argues, however, that the antecedent question of whether GP reasonably could have relied upon the representations of USF&G's agent, LD, so as to excuse GP's alleged failure to read the policy, should have been answered before the court addressed whether it was "reasonable under the circumstances" for GP to read the policy. LD argues that, under New Mexico law, the representations made to GP were such that GP was not required to read the policy at all.

Under New Mexico law, an insurance agent is deemed to be the agent of the insurer in any dispute between the insurer and the insured. Jackson Nat'l Life Ins. Co. v. Receconi, 827 P.2d 118, 128 (N.M. 1992) (citing NMSA 1978, § 59A-18-24 (Repl. Pamp. 1988)).[2] Despite insurance policy provisions to the contrary, an

---

[2]The applicable New Mexico statute provides in pertinent part:

> Any licensed agent appointed as agent by an insurer shall, in any controversy between the insured or his beneficiary and the insurer, be held to be the agent of the insurer which issued the insurance solicited or applied for, anything in the application or policy to the

insurance agent's knowledge and negligence is imputed to the insurer, and an agent can waive policy provisions on behalf of the insurer.  See Receconi, 827 P.2d at 127-29.

USF&G, however, would short-circuit the inquiry concerning representations of the alleged agent.  It would advance instead directly to the sequential principle that an insured who had the opportunity to examine his policy is bound by the terms of the policy in the absence of a showing of fraud.  See Western Farm Bureau Mut. Ins. Co. v. Barela, 441 P.2d 47, 49 (N.M. 1968); Porter v. Butte Farmers Mut. Ins. Co., 360 P.2d 372, 375 (N.M. 1961); Gendron v. Calvert Fire Ins. Co., 143 P.2d 462, 466 (N.M. 1943).  Although these cases do indeed stand for the urged principle, the New Mexico Supreme Court in a later case, Pribble v. Aetna Life Insurance Co., 501 P.2d 255 (N.M. 1972), stated that, "where the insured was entitled to and did rely upon the representations of an agent as to coverage, the insured can assume that the policy conforms to the representations and he is not barred from an action against the agent for negligence (or presumably against the agent's principal, the insurer) **because he failed to read it at all**." Pribble, 501 P.2d at 260 (emphasis added).

_____

contrary notwithstanding . . . .

NMSA 1978, § 59A-18-24 (Repl. Pamp. 1988).

-11-

USF&G argues that <u>Pribble</u> merely altered the "absolute rule" long established in New Mexico that an insured who had the opportunity to examine his policy was bound by the terms of the policy in the absence of a showing of fraud. We have studied <u>Pribble</u> closely, however, and are convinced that the "alteration" made by <u>Pribble</u> is consequential enough to require the district court here to reconsider its opinion, should it choose to apply New Mexico law. The New Mexico Supreme Court emphasized that "the insured is bound only to make such examination as would be reasonable for the average person under the circumstances." <u>Id.</u> The court concluded that it was

> not prepared to say that the exception to the rule is restricted to situations where the policy was not read due to trick or fraud. For we think a situation could arise in which as a reasonable consequence of statements innocently but mistakenly made by one in authority, the insured failed to examine the documents.

<u>Id.</u> Based on these holdings, the New Mexico Supreme Court reversed a lower court's grant of a summary judgment. We should observe that <u>Pribble</u> is a case that is in the same procedural posture, and is based on nearly identical legal arguments, that are urged on us in the case today.

As we read <u>Pribble</u>, the district court could not have found on the record before it that GP's failure to read the policy was "unreasonable as a matter of law." Under New Mexico law, factual issues remained concerning whether it was reasonable for GP to rely

-12-

on LD's representations that Oxy had been added as a covered insured (so as to excuse GP's failure to read the policy), when LD has adduced some evidence that: USF&G's agent had confirmed to GP, both orally and in writing (through the certificate of insurance) that the policy was issued in conformance with GP's request to have Oxy added; and GP had an ongoing relationship with USF&G and LD, during which USF&G had provided coverage for Oxy based on the same or similar requests for coverage for four years prior to the failure to add Oxy. Because we believe that, under New Mexico law, those issues of fact are material concerning what examination of the policy by GP was "reasonable," we find that summary judgment in favor of USF&G under New Mexico law was not appropriate.[3]

---

[3]Pribble has been cited with approval in a subsequent New Mexico case, Stock v. ADCO General Corp., 632 P.2d 1182 (N.M. App. 1981), cert. denied, ADCO General Corp. v. Stock, 632 P.2d 1181 (N.M. 1981). In Stock, the insured sued his insurance agent, broker, and truck-trailer liability insurer for denying his claim for collision loss. The insured, who owned a fleet of tractor-trailer units, admitted that he had received--but never read--his policy, but argued that the liability coverage of the policy was not what was quoted to him, nor what he reasonably expected. Citing Pribble, the Court of Appeals held that

> Stock, like the plaintiff in Pribble, did not reasonably expect the insurance policy to contain a named driver provision. He thought he would receive a physical damage insurance contract like those he had received previously from other agents and other companies. He was not advised by [the agent that the policy] was different from policies he had received in the past. He was not bound to read the policy word for word . . . .

> The trial court could properly refuse to adopt

-13-

III

USF&G raises a number of other grounds for affirmance of the district court's grant of summary judgment. Although we recognize that we may affirm a district court's ruling on summary judgment based on any legally sufficient ground, even one not relied upon by the district court, BMG Music v. Martinez, 74 F.3d 87, 89 (5th Cir. 1996), this discretionary tool does not require that we consider alternative grounds for affirmance, and we decline to do so here. We instead AFFIRM the district court's denial of the plaintiff's contract reformation motion, REVERSE the grant of summary judgment for USF&G, and REMAND the case for further proceedings not inconsistent with this opinion.

The initial task of the district court upon remand will be to make choice-of-law determinations relative to the different claims of the parties in their motions for summary judgment. We recognize that, if the district court decides that Texas law is appropriate for the resolution of either the merits, or of the procedural questions presented by the parties, much of the discussion in this opinion will be irrelevant to the district court's ultimate resolution of this case.

---

requested findings that Stock's failure to read the policy constituted contributory negligence.

Stock, 632 P.2d at 1184-85.

AFFIRMED in part, REVERSED in part, and REMANDED.