Billy MOORE and Joy Hively *v.* COLUMBIA MUTUAL CASUALTY INSURANCE COMPANY

CA 91-36                                                     821 S.W.2d 59

Court of Appeals of Arkansas
En Banc
Opinion delivered December 26, 1991

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellants.

*Snellgrove, Laser & Langley*, by: *Glenn Lovett, Jr.* for appellee.

JOHN E. JENNINGS, Judge. Bill Moore is an owner of a

business known as Moore Brothers Feed and Seed, in Black Rock, Arkansas. In February 1989, Moore sold a four-wheeler to Joy Hively. The vehicle was financed through First National Bank of Lawrence County and Moore retained a lien on the vehicle.

At the time of sale, Moore also sold Hively an insurance policy issued by Columbia Mutual Casualty Insurance Company. Moore told Hively that the policy was a theft policy and that for the four-wheeler to be covered it would have to be chained to a tree or something that would hold it.

In May of 1989, the four-wheeler was stolen. Hively had chained it to her mobile home and thieves had cut the chain.

Moore paid the balance of the note to the bank and he and Hively then sued Columbia Mutual on the policy. The policy provided coverage for: "Burglary from within a building or room. There must be evidence of visible entry." The trial judge granted Columbia Mutual's motion for summary judgment and Moore and Hively have now appealed.

The sole contention on appeal is that the policy provision was ambiguous and therefore it was error for the trial court to grant summary judgment. We affirm.

On deposition Moore testified that he had been told by Paul Morefield, an employee of Columbia Mutual, that for the vehicle to be covered, it would have to be "inside a shed or chained to a tree or chained to something that showed forcible entry." In his deposition, Paul Morefield testified that he was a territory manager for Columbia Mutual. Morefield testified that the policy covers "theft." His opinion was based on conversations with someone in the company's research and development department who had told him that burglary and theft were synonymous.

Summary judgment is an extreme remedy which should only be granted when it is clear that there is no genuine issue of material fact to be litigated. *See Ferguson* v. *Order of United Travelers*, 35 Ark. App. 100, 811 S.W.2d 768 (1991) (supplemental opinion on denial of rehearing). The moving party has the burden of demonstrating that there is no genuine issue of fact for trial and any evidence submitted in support of the motion must be viewed most favorably to the party against whom the relief is sought. *Walker* v. *Stephens*, 3 Ark. App. 205, 626 S.W.2d 200

(1981). On motion for summary judgment, the court is authorized to ascertain the plain and ordinary meaning of a written instrument "after any doubts are resolved in favor of the party moved against," and if there is any doubt about the meaning, there is an issue of fact to be litigated. *Brooks* v. *Renner & Co.,* 243 Ark. 226, 419 S.W.2d 305 (1967); *Ferguson,* cited above. Furthermore, provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it is the duty of the court to do so. *Home Indem. Co.* v. *City of Marianna,* 297 Ark. 268, 761 S.W.2d 171 (1988).

On the other hand, summary judgment should be granted when the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). When a contract is unambiguous, its construction is a question of law for the court. *Floyd* v. *Otter Creek Homeowners Ass'n,* 23 Ark. App. 31, 742 S.W.2d 120 (1988). The initial determination of whether or not a contract is ambiguous rests with the court. *C. & A. Constr. Co.* v. *Benning Constr. Co.,* 256 Ark. 621, 509 S.W.2d 302 (1974).

Appellants contend, and we agree for the sake of argument, that the term "burglary" as used in the policy is ambiguous. It may well be that under the circumstances of this case the policy could be construed to cover "theft." There is, however, no ambiguity in the policy language requiring that the property be taken "from within a building or room." Because that prerequisite for coverage was not met, the trial court was right in granting summary judgment. The situation is similar to that presented in *Ray* v. *Shelby Mutual Ins. Co.,* 14 Ark. App. 265, 687 S.W.2d 526 (1985). In *Ray* we said:

> The appellant argues that the agent who sold him the policy represented to him that the policy in question would cover such a loss as occurred here. Even if that allegation is true, at most it would give rise to a cause of action against the agent, but would not serve to provide coverage for losses which were specifically excluded by the unambiguous language of the policy.

*Ray,* 14 Ark. App. at 267; *see also Batesville Ins. & Fin. Co.* v. *Butler,* 248 Ark. 776, 453 S.W.2d 709 (1970). For the reasons

stated, the judgment of the trial court is affirmed.

Affirmed.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. Except for one point, I think the trial court erred in granting the motion for summary judgment filed by the appellee insurance company. I do agree that summary judgment should have been entered against appellant Bill Moore. He had no cause of action against appellee because the policy sued on was issued to the appellant Joy Hively. Bill Moore is not named therein as an insured under any situation. However, as to Joy Hively it was error, in my opinion, to grant a summary judgment against her.

The policy provides for coverage against ten different perils designated by the letters "A" through "J." The ninth peril insured against is stated as follows:

> Burglary from within a room. There must be evidence of visible entry.

The majority opinion states that "we agree for the sake of argument that the term 'burglary' as used in the policy is ambiguous." Moreover, the majority opinion states: "It may well be that under the circumstances of this case the policy could be construed to cover 'theft.'" But the opinion adds: "There is, however, no ambiguity in the policy language requiring that the property be *taken* 'from within a building or room.'" It should be noted that I have supplied the emphasis on the word "taken" but that the majority opinion has supplied the word "taken" as the word does not appear in the language describing the ninth peril insured against. It should also be noted that the policy does not define the word "burglary."

In *Thomas Jefferson Ins. Co.* v. *Stuttgart Home Center*, 4 Ark. App. 75, 627 S.W.2d 571 (1982), the word "burglary" was not defined and the court looked to our criminal code for the following definition: "A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment." *See* Ark. Code Ann. § 5-39-201 (1987). This accords with the usual dictionary definition. *See Webster's New*

*Collegiate Dictionary* (1979) which states that burglary is "the act of breaking into a building especially with intent to steal." With that general definition of burglary in mind, it is difficult to understand what peril the policy in the instant case is insuring against when it states that it covers "Burglary from within a room." Obviously, the use of the word "burglary" which generally means to break into a building with the intent to commit a crime is not compatible with the use of the word in the phrase "burglary from within a building or room." It is understandable, therefore, why the majority opinion adds the word "taken" to the policy language which describes the ninth peril insured against. Otherwise, the policy language has very little meaning.

It is equally understandable why Paul Morefield testified in his deposition that this policy covered theft. He was a territory manager for the appellee at the time of his deposition and testified that the appellee's Research and Development Department told him that the word "burglary" meant "theft" — that the terms were "interchangeable and synonymous." Mr. Morefield also testified that, in his opinion, the language used in stating the ninth peril insured against meant there was coverage for an item "stolen from inside a locked room [if] there is visible proof of entry." Of course, the attempt of this witness to define the meaning of the term "burglary" is simply an attempt to do what the policy failed to do. The *Thomas Jefferson Ins. Co.* case, *supra*, dealt with a similar attempt in the following language:

> Appellant did not choose to define burglary in its insurance policy with appellees and we believe it would be unconscionable to allow appellant to now define the coverage after the loss has occurred. The trial court's finding that the Motens sustained their loss as a direct result of the burglary is not clearly erroneous (clearly against the preponderance of the evidence). Rule 52, Arkansas Rules of Civil Procedure.

4 Ark. App. at 79.

In the instant case, the language used to state the ninth peril insured against is plainly ambiguous. What did this policy provision really insure against? It is perfectly obvious that a four-wheeler is not likely to be in a room in a house unless the room is the garage. Joy Hively lived in a house trailer and there is nothing

in the record to indicate that she even had a garage. Why would she want "burglary" insurance as that term is generally used? The answer is that Bill Moore testified in a deposition that he was told by the appellee's Paul Morefield that the four-wheeler which was stolen in this case would be covered for theft if it was "inside of a building or chained to a tree or chained to something to show physical entry." Bill Moore also said he told this to Joy Hively. The loss sought to be recovered in this case is for a four-wheeler that was stolen by cutting the chain by which it was chained to a tree outside of the house trailer in which Joy Hively, the insured, lived. While Paul Morefield denies that he said what Bill Moore testified to in regard to coverage of the four-wheeler, this presented an issue of fact. Since the coverage as. stated in the policy is ambiguous, evidence of the construction placed upon it by the appellee's employee, Paul Morefield, should be sufficient to show that there is a genuine issue of fact. In considering a motion for summary judgment "all proof submitted is viewed in the light most favorable to the party resisting the motion," and "any doubts and inferences are resolved against the moving party." *Cross* v. *Coffman*, 304 Ark. 666, 671, 805 S.W.2d 44 (1991).

The majority opinion cites *Ray* v. *Shelby Mutual Ins. Co.*, 14 Ark. App. 265, 687 S.W.2d 526 (1985), as support for the majority decision in the present case. I would note that the case cited was a three to three decision. I wrote the dissent in which Judges Cloninger and Corbin joined. My dissent cited the case of *King* v. *Travelers Insurance Company*, 84 N.M. 550, 505 P.2d 1226 (1973), and it quoted from that case the following:

> Finally, in addition to a question of ambiguity resulting from a mere reading of the policy, Appellants point out, and the record supports, the logical inference that the insurer's agents were also in doubt as to the applicability of the pertinent provisions of the policy in question. Although Appellants do not argue that theories of waiver and estoppel are applicable here, Appellants' argument is persuasive evidence of the policy's ambiguity.

505 P.2d at 1232.

I have not changed my views as expressed in the *Ray* v. *Shelby Mutual* dissent. In the instant case, the majority really concedes that the language used in stating the ninth peril insured

against is ambiguous. It also admits that the deposition of Bill Moore contains testimony that the appellee's employee Paul Morefield told Moore that the four-wheeler sold by Moore to appellant Joy Hively would be insured if it were "inside a shed or chained to a tree or chained to something that showed forcible entry." But instead of holding that the coverage in this case is a fact issue, the majority opinion adopts a construction of the coverage language which it finds resolves the ambiguity as to the loss involved in this case. I submit the issue is one of fact and that the majority has simply rewritten the policy provision.

I dissent.