Thomas Craig KELLER and Craig Keller Flying Service, Inc.
*v.* SAFECO INSURANCE COMPANY OF AMERICA and
General Insurance Company of America

CA 93-528                                    866 S.W.2d 419

Court of Appeals of Arkansas
En Banc
Opinion delivered November 17, 1993

*Butler, Hicky & Long*, by: *Fletcher Long, Jr.*, for appellant.

*Snellgrove, Laser, Langley & Lovett*, by: *Todd Williams*, for appellee.

JOHN B. ROBBINS, Judge. Thomas Craig Keller and Craig Keller Flying Service, Inc., appeal from a summary judgment for appellees, Safeco Insurance Company of America and General Insurance Company of America, on a claim for reimbursement of $8,650.00 for damages to an airplane owned by appellants. We affirm.

On March 18, 1991, appellees issued an insurance policy to appellants for $140,000.00 in coverage for a 1975 AgCat airplane. This policy had a $1,000.00 deductible if a loss occurred while the plane was "not in motion" and a deductible of ten percent of the total amount of insurance if the airplane was "in motion" when the loss occurred. In the definitions section, "in motion" was defined as: "The *aircraft* shall be deemed *'in motion'* when moving under its own power, or momentum therefrom. The *aircraft* shall be deemed *'not in motion'* under all other circumstances." "Aircraft" was defined as follows:

> *"Aircraft"* means the airplane or rotorcraft described herein and shall include the engines, propellers, rotor blades, tools and repair equipment therein which are standard for the make and type of the *aircraft,* and operating and navigation instruments and radio equipment usually attached to the *aircraft,* including parts temporarily detached and not replaced by other similar parts.

In another provision of the policy, the application of both deductibles was explained as follows:

> In the event the *aircraft,* while *not in flight,* is damaged by wind, hurricane, tornado, ice, snow or fire which occurs while the *aircraft* is unhangared and *not in flight,* the insurance afforded by Coverages H & I is subject to a single amount deductible, "Not in Motion" or "In Motion," of ten percent (10%) of the amount of insurance for the *aircraft.*[1]

---

[1] The dissent suggests that this deductible provision may have not been in effect at the time of the accident. However, the page of the subject policy which sets forth this provision was among those pages of the policy which appellants attached as an exhibit to their complaint. Appellants alleged in their complaint that this "policy was in effect" at the time of the accident.

The plane suffered $9,650.00 of damages on May 13, 1991, during a windstorm. Appellants made a claim on the policy, and appellees denied it on the ground that the ten percent deductible applied and, therefore, the loss was less than the applicable deductible of $14,000.00. On April 7, 1992, appellants filed suit against appellees, taking the position that the $1,000.00 deductible applied to the claim.

In September 1992, the depositions of Jack Keller, Todd Wilkins, Larry McIntosh, and appellant Craig Keller, all of whom witnessed the accident, were taken. Craig Keller testified that he had flown the airplane all day; when he stopped flying in order to eat, he noticed a storm approaching. He then started the engine and taxied down the runway in order to secure the airplane. He felt the wind picking up and the airplane's wheels sink in the gravel. He tried to move the plane closer to the tie-down area but was unsuccessful. He stated that the wind got much worse, so he turned the engine off. The propeller continued to turn, however, and the wind lifted the tail of the airplane up, causing the propeller to hit the gravel. All of the blades were damaged.

Jack Keller testified that the engine was not running but the propeller was still turning from the momentum of the engine when the tail was lifted up. Todd Wilkins testified that, although he did not know if the engine was running, the propeller was turning when the propeller hit the gravel. Larry McIntosh also stated that the propeller was still turning when the tail came up and the propeller hit the gravel.

Appellees filed a motion for summary judgment and argued that, because the propeller was included within the definition of "aircraft" in the policy and was still moving when the loss occurred, the aircraft should be deemed to have been "in motion" when the loss occurred. Therefore, appellees argued, the unambiguous terms of the contract provided for the application of the ten percent deductible. The circuit judge agreed and held that, at the time of the loss, the aircraft was "in motion" under the terms of the policy and, therefore, the "in motion" deductible applied. He held that, because the damage to the aircraft was less than the "in motion" deductible, appellants could not recover from appellees.

For their first point, appellants argue that, although the facts are undisputed, it was error to enter summary judgment for appellees because the definitions in the policy were ambiguous. Appellants argue that the policy was fairly susceptible to two or more interpretations. They argue that it was not clear whether, under the definition of "in motion," the aircraft should have been deemed to be "in motion," if *any* part of the aircraft was moving. Appellants argue that, under the policy, for the aircraft to have been "in motion," *all* of its parts must have been moving. Appellees again argue that the policy was not ambiguous and that its construction and legal effect should be determined by the court as a question of law. We agree with appellees.

Summary judgment is an extreme remedy and should be granted only when it is clear that there is no issue of fact to be decided. *Johnson* v. *Stuckey & Speer, Inc.*, 11 Ark. App. 33, 35, 665 S.W.2d 904, 906 (1984). Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Magness* v. *Commerce Bank*, 42 Ark. App. 72, 77, 853 S.W.2d 890, 893 (1993); *Watts* v. *Life Ins. Co. of Ark.*, 30 Ark. App. 39, 41, 782 S.W.2d 47, 48 (1990). Once the moving party makes a prima facie showing of entitlement to summary judgment, the party opposing summary judgment must meet proof with proof by showing a genuine issue as to a material fact. *Magness* v. *Commerce Bank*, 42 Ark. App. at 78, 853 S.W.2d at 893.

On motion for summary judgment, the court is authorized to ascertain the plain and ordinary meaning of a written instrument after any doubts are resolved in favor of the party moved against, and if there is any doubt about the meaning, there is an issue of fact to be litigated. *Moore* v. *Columbia Mut. Casualty Ins. Co.*, 36 Ark. App. 226, 228, 821 S.W.2d 59, 60 (1991). The initial determination of whether a contract is ambiguous rests with the court. *Id.* When the intent of the parties as to the meaning of a contract is in issue, summary judgment is particularly inappropriate. *Camp* v. *Elmore*, 271 Ark. 407, 408-09, 609 S.W.2d 86, 87 (Ark. App. 1980). When the terms of a written contract are ambiguous, the meaning of the contract becomes a question of fact. *Stacy* v. *Williams*, 38 Ark. App. 192, 196, 834 S.W.2d 156, 158 (1992).

When a contract is unambiguous, however, its construction is a question of law for the court. *Moore* v. *Columbia Mut. Casualty Ins. Co.*, 36 Ark. App. at 228, 821 S.W.2d at 60. If the terms of an insurance contract are not ambiguous, it is unnecessary to resort to the rules of construction, and the policy will not be interpreted to bind the insurer to a risk which it plainly excluded and for which it was not paid. *Baskette* v. *Union Life Ins. Co.*, 9 Ark. App. 34, 36-37, 652 S.W.2d 635, 637 (1983).

■ We agree with the circuit judge and appellees that the policy was not ambiguous. Its definition of the term "aircraft," which clearly included the propeller, must be viewed in light of the entire policy; it is especially appropriate to consider the deductible provision quoted above in reaching a decision. Different clauses of a contract must be read together and the contract construed so that all of its parts harmonize if that is at all possible. *Pate* v. *U.S. Fidelity & Guar. Co.*, 14 Ark. App. 133, 135, 685 S.W.2d 530, 532 (1985). The intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. *Id.* Therefore, the definitions provision relied upon by the appellees is simply a part of the entire policy, in light of which it must be viewed. *See Floyd* v. *Otter Creek Homeowners Ass'n*, 23 Ark. App. 31, 36, 742 S.W.2d 120, 123 (1988). No one disputes that the propeller was still moving when the loss occurred. Accordingly, we agree with the circuit judge that the "in motion" deductible applied.

■ Furthermore, even if we held that the trial court erred in concluding that there was no genuine issue of material fact that the aircraft was "in motion" when the propeller blades struck the ground, the pleadings and affidavits clearly show that there is no genuine issue that the aircraft was damaged by wind, while unhangared and not in flight. Consequently, pursuant to the deductible provision of the policy quoted above, the deductible is $14,000.00, an amount greater than appellants' loss. We may affirm a trial court for a reason different than the one given by the trial court. *Hubbard* v. *The Shores Group, Inc.*, 313 Ark. 498, 502, 855 S.W.2d 924, 927 (1993); *Guthrie* v. *Tyson Foods, Inc.*, 285 Ark. 95, 97, 685 S.W.2d 164, 165 (1985); *Monaghan* v. *Davis*, 16 Ark. App. 258, 262, 700 S.W.2d 375, 377 (1985). Summary judgment was properly entered for appellees.

Affirmed.

JENNINGS, C.J., COOPER and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge. The proper deductible to apply in this case depends on whether the aircraft was "in motion" when the accident occurred. This question cannot be answered unambiguously by reference to the definitions section of the insurance policy. Although, as the majority notes, the definition of "aircraft" included the propeller, I do not agree that this inclusion clarifies the question of whether the aircraft is "in motion" under the policy so long as the propeller is turning. In this context, I think it should be noted that the definition of "aircraft" also includes tools in the aircraft, as well as radio and navigation instruments. Surely no one would argue that the aircraft is "in motion" under this policy so long as a wrench is being used, a radio dial is being turned, or a clock is ticking, but such a result must logically follow from the reasoning employed by the majority.

Furthermore, it is obvious to me that the purpose of the "in motion" provision is to limit the exposure of the insurer in cases where the aircraft is moving, and where an accident would therefore be more likely to involve extensive damage, if not total loss. This purpose would not be compromised by applying the $1,000 deductible in the case at bar where the aircraft was immobile when the accident took place.[1] I submit that the definitions section of the policy is ambiguous in this regard, and that the policy should therefore have been construed in favor of the insured. See Moore v. Columbia Mut. Cas. Ins. Co., 36 Ark. App. 226, 821 S.W.2d 59 (1991). We should therefore remand this case for trial.

Furthermore, I submit that the majority should not have considered the deductible provision in arriving at its decision. Although I agree that this provision may be applicable, it is extremely important to note that this provision was not abstract-

---

[1]Although it would seem from the facts recited by the majority that the airplane had just landed when the accident occurred, the record shows that the pilot had landed, left the airplane to eat lunch, and returned to the airplane afterwards to move it, whereupon the airplane became stuck in the mud, rendering it immobile. The accident occurred after the airplane became stuck.

ed by the parties, and none of the parties argued either to the trial court or to this court that it is applicable to the issue before us. The silence of the parties in this regard gives us an important indication of how they interpret their own agreement, *See Missouri State Life Ins. Co.* v. *Ross*, 185 Ark. 556, 48 S.W.2d 230 (1932); *Missouri State Life Ins. Co.* v. *Hill*, 109 Ark. 17, 159 S.W. 31 (1913) and I believe that we have failed to give the parties' construction of the agreement the great weight to which it is entitled. Perhaps the parties do not cite the deductible provision because it was not in effect at the time of the accident. I suggest that it is unwise of us to presume that we have a greater familiarity with the terms of the parties' agreement than the parties themselves.

Finally, I wish to emphasize that the deductible provision quoted by the majority in support of its decision was not argued as a basis for summary judgment in the appellee's motion. By seizing on this unargued point in order to affirm, we are going far beyond the parameters of Rule 56. Our Supreme Court has said that, in considering a motion for summary judgment, it would be error for a court to consider any allegations brought out for the first time in the parties' briefs. *Eldridge* v. *Board of Correction*, 298 Ark. 467, 768 S.W.2d 534 (1989). In the case at bar we are, in effect, sanctioning a summary judgment on grounds that were never brought out by the parties at all. Even if we have thereby arrived at an answer which is academically sound, that answer is not legally correct if we must depart from our standard of review to reach it.

I dissent.

MAYFIELD, J., joins in this dissent.