**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

Nos. 96-3095 and 96-3281

| | | |
|---|---|---|
| Southern Implement Company, Inc., | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Deere & Company, | * | |
| | * | |
| Appellee. | * | |

Submitted: March 13, 1997

Filed:  July 29, 1997

Before FAGG and HEANEY, Circuit Judges, and NANGLE,[1] Senior
       District Judge.

HEANEY, Circuit Judge.

_____

     The Honorable John F. Nangle, Senior United States District Judge for the Eastern
District of Missouri, sitting by designation.

Southern Implement Company ("Southern Implement") appeals the district court's grant of summary judgment in favor of Deere & Company ("Deere") on Southern Implement's breach of contract and statutory violation claims. We affirm in part and reverse in part.

## FACTS

Given the posture of this case, we consider the facts in the light most favorable to the nonmoving party, Southern Implement. See, e.g., Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Southern Implement is a farm equipment dealer for Deere in Phillips County, Arkansas. Following a history of business relations with Deere,[2] Southern Implement entered into a contract with the company entitled John Deere Company Authorized Agricultural Dealer Agreement ("Agreement") in 1987. The terms and conditions of the Agreement are virtually identical to Deere's agreements with its dealers nationwide. J.A. at 65. The contract assigns to Southern Implement an area of responsibility ("AOR") that includes the towns of Helena, Marvell, and

---

Southern Implement became a Deere dealer in 1951, located in Helena, Arkansas. In 1964, Southern Implement opened another dealership in Elaine, Arkansas. In 1978, the company purchased the dealership in Marvell, the only other Deere dealership in Phillips County.

Until 1985, Deere renewed annual dealership agreements with Southern Implement. After that time, Deere and Southern Implement executed three open-ended dealership agreements with no fixed term. The 1985 contracts ended in January 1987, when the parties entered into the agreement at issue.

2

Elaine, Arkansas, and the surrounding area.[3]  The Agreement requires a dealer such as Southern Implement to "thoroughly canvass his [AOR], to actively promote the sale of all Goods which are usable in his [AOR], and to maintain an inventory of Goods in proportion to the sales possibilities in such area."  Agreement, § 1(f).

The Agreement also requires a dealer to "maintain his principle place of business at the location set forth [by the Agreement]."  Agreement, § 1(k).  The Agreement prohibits dealers from "either directly or indirectly, establish[ing], maintain[ing], or operating a facility at any other location for displaying, selling, renting, leasing, or servicing of new or used goods, without the prior written approval of [Deere]."  Id.  If a dealer's franchise is canceled or terminated according to the terms of the agreement, Deere "may negotiate and/or enter a Dealer Agreement with another party for the Dealer's [AOR]."  Agreement, § 4.

One of the largest farming operations in Southern Implement's AOR during the mid-1980's belonged to David Brooks Griffin.  Griffin and his father owned an International Harvester ("I.H.") dealership in Elaine until 1985 and Griffin used I.H. equipment on his 23,000 acre farming operation.  After the I.H. dealership closed, Griffin operated Elaine Parts, an agricultural parts and equipment store, in the building that had housed the dealership.

_____

The introduction to the contract contains the statement that "[a] Dealer accepts as his area of responsibility the town in which his place of business is located and vicinity."

In 1989, Griffin bought Producer's Tractor Company, Inc. ("Producer's"), a Deere dealership located in Brinkley, Arkansas, seventy miles from Elaine. Producer's began supplying Griffin's Elaine farming operation with Deere parts and equipment through Elaine Parts. Southern Implement alleges that sometime in late 1990 or early 1991 Producer's expanded its efforts to supply Deere parts to the general public.

Southern Implement's Elaine facility took a downward financial turn in late 1991. In February 1992, Southern Implement's management met with Bill Hubbard, Manager of Deere's Dallas branch, the unit that supervises dealership activity in Arkansas. Southern Implement alerted Hubbard that Producer's was distributing Deere parts through Griffin's Elaine Parts facility. Hubbard said he would investigate and report the results to Southern Implement.

Hubbard never reported back to Southern Implement regarding its complaint. Rather, Southern Implement asserts that Deere encouraged Producer's to operate the unauthorized facility.[4] Southern Implement continued to complain to Deere management that Elaine Parts was selling Deere equipment. Deere's representatives asked Producer's employees if they were selling Deere products to the general public through Elaine parts, and the response was, "no." They claimed that they only sold parts to Griffin's farming operations.

---

For example, Deere initially permitted the placement of a computer system at Elaine Parts that would allow Producer's to take parts orders there, despite Deere's internal guidelines that restrict the systems to a dealer's AOR. Deere revoked its permission to install the system after it recognized the violation of its rules.

In 1993, Griffin ceased his farming operations. The land previously farmed by Griffin was taken over by Tyler Farms, a partnership that included multiple corporate entities. Griffin remained the landlord, although he did not participate in farming the land himself. Elaine Parts continued to provide Deere parts to customers in the area, including Tyler Farms.

In February 1993, Southern Implement closed its Elaine facility due to mounting losses.[5] Following the closure, Southern Implement filed a complaint alleging that Deere, by allowing Producer's to operate through a facility within Southern Implement's Elaine AOR: (1) breached its dealer agreement with Southern Implement, (2) broke the implied covenant of good faith and fair dealing, (3) breached its duty to act with commercial reasonableness under the Arkansas Franchise Practices Act, Ark. Code Ann. § 4-72-206, and (4) changed the competitive circumstances of the dealership in violation of the Arkansas Farm Equipment Retailer Franchise Protection Act, Ark. Code Ann. § 4-72-310.

After Southern Implement filed its complaint, Deere conducted a survey to discover whether Producer's was selling parts to the general public through Elaine Parts. Deere discovered that on at least one occasion Elaine Parts sold equipment to a member of the general public. J.A. at 131. Deere also discovered that several large producers in the area were acquiring equipment at Elaine Parts through what was described as "borrowing" from the Tyler Farm inventory at Elaine Parts. Id.

---

Griffin requested that Deere take the Elaine AOR from Southern Implement and assign it to Producer's, but Deere refused, allowing Southern Implement to retain the Elaine AOR.

Moreover, two Producer's sales representatives had offices at Elaine Parts.

Deere responded to Southern Implement's complaint by moving for summary judgment. Deere asserted that the Agreement does not give the franchisee an exclusive right to sell Deere products in its AOR. Nor does the Agreement require Deere to police a franchisee's AOR to prevent other dealers from establishing facilities in the AOR.

The district court granted Deere's motion for summary judgment. The court construed the Agreement to allow other dealers to maintain facilities within a dealer's AOR. The court further held that, even if the Agreement prohibited such an encroachment, Southern Implement failed to present evidence that Deere knew about the violative facility or that Deere had any obligation to police Southern Implement's AOR. Therefore, the court determined that Deere did not breach the Agreement.

The court also held that, in the absence of a contractual obligation, Deere could not have breached the covenant of good faith and fair dealing. Moreover, Southern Implement did not present evidence of bad faith by Deere. The court rejected Southern Implement's commercial reasonableness claim, holding that Deere's actions conformed to the contract and were thus reasonable. Finally, the court held that the Arkansas Farm Equipment Retailer Franchise Protection Act was inapplicable.

## DISCUSSION

Southern Implement appeals the district court's grant of summary judgment. For the reasons below, we reverse the district court with respect to Southern Implement's breach of contract, breach of the implied covenant of good faith and fair dealing and commercial reasonableness claims. We affirm the district court's grant of summary judgment on Southern Implement's claim under the Arkansas Farm Equipment Retailer Franchise Law.

Breach of Contract

We review a grant of summary judgment de novo. Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994). Under Arkansas law, the court ascertains the plain and ordinary meaning of a contract. Moore v. Columbia Mut. Cas. Ins. Co., 821 S.W.2d 59, 60 (Ark. App. 1991). The initial determination whether a contract is ambiguous is a legal determination for the court. Cate v. Irvin, 866 S.W.2d 423, 426 (Ark. App. 1993). When a contract is unambiguous, the court determines its construction as a matter of law. Id. Where there is ambiguity in a contract, the meaning of the terms of the contract becomes a question of fact. Stacy v. Williams, 834 S.W.2d 156, 158 (Ark. 1992).

We believe that the Agreement is ambiguous with respect to a dealer's right to operate in an AOR free of other dealers' facilities. Although the Agreement describes an AOR and the dealer's duties within its AOR, the Agreement does not explicitly

8

provide a dealer with an exclusive right to operate a facility to sell and service Deere products within an AOR. It does, however, contain two clauses that strongly support a dealer's right to operate without the encroachment of other dealers' unauthorized facilities within the AOR.

Under the terms of the agreement, Deere permits a dealer to create and operate facilities outside its AOR only by written permission from Deere. Agreement, § 1(k). Deere will only reassign an AOR if the existing dealer's operation ceases. Agreement, § 4. Based on the language of these two provisions and the long-standing history and conditions of Southern Implement's prior dealings with Deere, a jury could reasonably find that Southern Implement has a contractual right to an AOR free of unauthorized facilities, provided Southern Implement continued to operate and Deere had not given written permission to another dealer to place a facility in Southern Implement's AOR.

We agree with the district court that the provisions above do not place a requirement on Deere to police every dealer's AOR for encroachment by other dealer's facilities. We believe, however, that a jury could find that once Deere was informed that a dealer was operating an unauthorized facility in another dealer's AOR, Deere had a duty to investigate and, if necessary, to prevent the dealer from operating the unauthorized facility by the same mechanisms Deere would use to prevent other unauthorized dealer activity.

Southern Implement has presented evidence to support a finding that Producer's was operating an unauthorized facility that sold Deere parts to the general public in

9

Southern Implement's AOR. Southern Implement also presented evidence to support that Deere was bound by and failed to meet its obligation to prevent the unauthorized facility from operating in Southern Implement's AOR, and that the failure resulted in lost revenue to Southern Implement's Elaine store. Therefore, summary judgment was improper.

Good Faith

Arkansas law states that every contract imposes an obligation of good faith in the performance of the contract. Ark. Code Ann. § 4-1-203. To establish a breach of that obligation, the plaintiff must demonstrate that the defendant was not honest in fact and that he acted with a bad motive. JRT, Inc. v. TCBY Systems, Inc., 52 F.3d 734, 736 (8th Cir. 1995). Similarly, The Arkansas Franchise Practices Act requires a franchisor to act in a commercially-reasonable manner and in good faith in its relationship with a franchisee.[6] Ark. Code Ann. § 4-72-206.

---

The Arkansas Franchise Practices Act provides, in pertinent part:

**Unlawful practices of franchisors.**

It shall be in violation of this chapter for any franchisor . . . to engage directly or indirectly in any of the following practices:

. . .

(6) To refuse to deal with a franchise in a commercially reasonable manner and in good faith . . . .

Ark. Code Ann. § 4-72-206.

10

The district court held that because Deere had no contractual obligation to prevent Producer's from operating a facility in Southern Implement's AOR Southern Implement could not show Deere acted in bad faith by failing to do so. We have determined that a jury could find that Deere had an obligation to investigate and prevent Producer's from operating an unauthorized facility. Therefore, we must consider whether Southern Implement presented evidence to support a claim that Deere's failure to do so constitutes bad faith.

Deere clearly knows the language contained in the Agreement. Southern Implement presented evidence of its agents informing Deere that Producer's was using an unauthorized facility to sell and service Deere equipment in Elaine. Because they were the largest operations in Phillips County, Deere had an interest in maintaining the Griffin and Tyson farm accounts. Given this and the evidence that Deere failed to respond to Southern Implement's concerns, a jury could reasonably conclude that Deere was not honest in fact and acted with a bad motive with respect to Deere's contractual obligations to Southern Implement. Therefore, we reverse summary judgment on both the breach of the implied covenant of good faith and fair dealing and the violation of the Arkansas Franchise Practices Act claims.

Violation of the Arkansas Farm Equipment Retailer Franchise Protection Act

The district court granted summary judgment on Southern Implement's claim under the Arkansas Farm Equipment Retailer Franchise Protection Act, Ark. Code Ann. § 4-72-310, holding that the law does not apply to the circumstances of this case. We agree. The only section of the law arguably applicable to the present case is § 4-72-

310(b)(4), which requires a "natural disaster" to trigger the law's prohibition.[7]  While we acknowledge that the law includes  "labor disputes" as natural disasters and that "other circumstances beyond the dealer's control" is rather broad, we do not believe that Deere's relationship with Producer's qualifies as a natural disaster for the purposes of the law.  We therefore affirm the district court's grant of summary judgment on that statutory claim.

## CONCLUSION

Accordingly, the district court's grant of summary judgment is reversed in part and affirmed in part.  We remand the case for further proceedings consistent with this opinion.

---

Section 4-72-310(b)(4) provides:

(b) It is a violation of this subchapter for a manufacturer to:

. . .

(4) Attempt to threaten to terminate, cancel, fail to renew, or substantially change the competitive circumstances of the dealership agreement based on the result of a natural disaster, including a sustained drought in the dealership market area, labor dispute, or other circumstances beyond the dealer's control.

§ 4-72-310(b)(4).

13

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS FOR THE EIGHTH CIRCUIT.